Dorothy Caroline JONES,
Plaintiff–Appellee,

v.

Curtis Lamar JONES, Defendant–
Appellant.

No. 03S01–9601–CH–00002.

Supreme Court of Tennessee,
at Knoxville.

Sept. 16, 1996.

Rehearing Denied Oct. 28, 1996.

William H. Hall Soddy–Daisy, for Plaintiff–Appellee.

Selma Cash Paty, Paty, Rymer & Ulin, P.C., Chattanooga, for Defendant–Appellant.

## OPINION

DROWOTA, Justice.

This child support case presents a single issue for our consideration: whether the trial court erred in finding that the child support guidelines were inapplicable, and thereafter setting the child support at an amount approximately 30% less than that called for in the guidelines. For the reasons that follow, we conclude that the grounds relied upon by the trial court are insufficient to justify a downward deviation from the guidelines; therefore, we reverse the judgment of the trial court and Court of Appeals.

### FACTS AND PROCEDURAL HISTORY

The pertinent facts of this case are undisputed. On May 5, 1987, the parties were granted a divorce in the Hamilton County Chancery Court. Custody of the parties' two minor sons was given to the father, Curtis Lamar Jones, and the mother, Dorothy Caroline Jones, was ordered to pay child support

in the amount of $220 every two weeks. The mother was granted visitation on every other weekend and for two weeks during the summer.

Some months later Congress passed the Family Support Act of 1988, which provided federal funding to assist states in securing and enforcing judgments for child support. In order to receive those funds, however, states were required, among other things, to "establish guidelines for child support award amounts within the state." 42 U.S.C. § 667(a). In response to that congressional mandate, the Tennessee Department of Human Services (DHS) promulgated its guidelines, Tenn.Comp.R. & Regs., ch. 1240–2–4–.01—1240–2–4–.04, which were then adopted by the General Assembly. These guidelines, which are to be applied by the trial court unless the court makes a specific written finding that they should not apply, Tenn. Code Ann. § 36–5–101(e), specify that a certain percentage of the noncustodial parent's income is to be paid as child support, the percentage being dependent on the number of children for which support is ordered. The guidelines became effective on October 13, 1989.

In June 1991 Curtis Jones filed a petition seeking an increase in child support. In January 1992, the trial court found that there had been a material change in circumstances because of (1) the increased cost of caring for older children, and (2) the fact that the mother's income had risen substantially since the divorce. The trial court thus increased the child support to $320 every two weeks. Although the amount was approximately 30% below that contemplated by the guidelines, the court declined to apply them, stating that "this is a preguidelines case."

Curtis Jones then appealed, and after an affirmance by the Court of Appeals, this Court considered this case for the first time. In *Jones v. Jones,* 870 S.W.2d 281 (Tenn. 1994), we pointed out that the child support guidelines explicitly provide that they are to be applied in any action brought to establish or *modify* child support. Tenn.Comp. R. & Regs., ch. 1240–2–4–.02(3) (emphasis added). Since the father's June 1991 petition sought a modification of the 1987 award, we reversed

the judgment and remanded the case, directing the trial court to either apply the guidelines or to enter a written finding explaining why it would be "unjust or inappropriate" to apply them.

On December 6, 1994, the trial court filed its order on remand. That order provides, in pertinent part:

This cause is before the court on remand from the Supreme Court of Tennessee on the issue of the proper amount of child support to be paid by the plaintiff. At the previous trial, the court found a change of circumstances but did not increase the support to the amount specified under the child support guidelines. The Supreme Court remanded . . .

The evidence presented to the court on November 25, 1991 established the following facts:

1. At the time of the divorce on April 6, 1987 plaintiff, Dorothy Caroline Jones, was employed by the Tennessee Valley Authority earning a salary of $30,186 per year. Her salary in November 1991 was $52,000 per year, an increase of approximately $22,000.

2. At the time of the divorce, defendant, Curtis Lamar Jones, was earning a salary of $20,400 per year. At the time of the hearing on the Complaint to Modify in November 1991, he filed a sworn statement showing his income to be $35,820 per year. Under cross-examination, it was established through his income tax returns that his income for the prior two years was $39,982 in 1989 and $45,222 in 1990, and his rate of pay had not been decreased at the time of the hearing.

3. Plaintiff was using her increased pay to obtain schooling and for the purchase of a house in a safe area in Atlanta at a cost of $119,000.

4. Since the divorce, defendant had added a van and a motorcycle to the pickup truck and boat and house which he was awarded in the divorce.

5. Defendant had taken a number of expensive vacations with the children and had taken one trip to the Virgin Islands without the children.

6. The monthly expense figures which defendant claimed on his sworn income and expense statement were shown to be inflated figures.

7. Plaintiff proved that her monthly expense figures were both true and reasonable.

8. Defendant's misrepresentation of income, exaggeration of needs, and somewhat extravagant use of funds combined with plaintiff's use of increased income for education and housing render inappropriate the application of the child support guidelines and plaintiff should pay only the amount proved to be reasonably needed by defendant for support of the children.

For the foregoing reasons the court set the child support at $320.00 every two weeks after the hearing on November 25, 1991 and affirms that disposition on remand from the Supreme Court.[1]

Curtis Jones again appealed to the Court of Appeals, and a majority of that court affirmed the judgment. The majority explained that trial courts have discretion to deviate from the guidelines in an appropriate case; and it believed that deviation was appropriate, primarily because of the fact that the mother's new higher paying job required a college degree, and thus necessitated her educational expenses.

Judge Susano, however, dissented from the majority's treatment of the issue. He began by stating his belief that the adoption of the guidelines had completely changed the older law, in which trial courts were vested with almost total discretion in setting the amount of the child support award. While conceding that trial courts have limited discretion to deviate from the guidelines, Judge Susano argued that allowing deviation in the case before the court would be "to retreat to a methodology in vogue at an earlier time—a case-by-case methodology that has been discredited and supplanted by the General Assembly's adoption of the guidelines." He concluded by stating that "I believe the time has come for the Supreme Court to comprehensively address the concept of deviation embodied in the guidelines."

The issue of the trial courts' authority to deviate from the guidelines has been problematic, resulting in the disagreement in this case and in differing interpretations among the sections of the Court of Appeals. Therefore, we granted Curtis Jones's application for permission to appeal in order to address the issue.

## ANALYSIS

Initially, there can be no doubt that the guidelines promulgated by DHS and adopted by the General Assembly are radically different from the older law governing child support awards. Whereas the lack of standards in the older law resulted in widely divergent awards in similar factual circumstances, see Margaret Campbell Haynes, "Understanding the Guidelines and the Rules", 16 *ABA Family Advocate* 14 (1993), the guidelines, by contrast, are designed to make awards more equitable by providing a standardized method of computation. That method is, moreover, very straightforward: the court calculates the net income of the parent with whom the child(ren) do not primarily live, called the "obligor," [2] and then multiplies that figure by the percentage which corresponds to the number of children for whom support is being set.[3] That amount is then payable to the "obligee," the parent with whom the child(ren) primarily live.[4]

There can also be no doubt that the General Assembly intended that these guidelines control the amount awarded as child support.

---

1. This order applies only to the period from November 1991 to July 1994. On the next day, December 7, 1994, the trial court entered another order in which it directed Dorothy Jones to pay, as of July 1, 1994, support of $1,087 per month in accordance with the guidelines.

2. The method for computing the net income of the obligor is set forth in Tenn.Comp.R. & Regs., ch. 1240–2–4–.03(3) and (4).

3. The percentages are contained in Tenn. Comp.R. & Regs.. Ch. 1240–2–4–.03(5).

4. The guidelines are based upon a number of assumptions, one of them being that that the child(ren) live primarily with the obligee and visit the obligor every other weekend, two weeks during the summer, and two weeks during the holidays throughout the year. Tenn.Comp.R. & Regs., Ch. 1240–2–4–.02(6).

The enabling legislation, Tenn.Code Ann. § 36–5–101(e)(1), provides that:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

Furthermore, this directive is set forth twice more in the guidelines themselves. *See* Tenn.Comp.R. & Regs., ch. 1240–2–4.01(3) and 1240–2–4.02(7).

■ Although § 36–5–101(e)(1) and the accompanying rules clearly embody the legislature's intention that the guidelines govern the amount of child support awarded, the fact that the presumption is rebuttable implies that the trial courts have limited discretion to deviate from the guidelines. The subject of deviation is addressed in Tenn.Comp.R. & Regs., ch. 1240–2–4–.04. That rule, entitled "Criteria For Deviation From Guidelines," provides in pertinent part as follows:

> (1) Since these percentage amounts [expressed in Rule 1240–2–4–.03(5) ] are minimums, the court shall increase the award calculated in Rule 1240–2–4–.03 for the following reasons:
>
> > (a) If the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated in the above rule.
> >
> > (b) If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) is/are not with the obligor.
> >
> > (c) Extraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule.
> >
> > (d) Any other extraordinary expenses for the child(ren) may justify increasing the support calculated in the above rule if the court finds that equity requires it.
> >
> > . . .
> >
> > (f) Valuable assets and resources [that would not normally be included in the computation of net income] of the obligor should be considered for the purpose of imputing income and increasing the support award in any case if the court finds that equity requires it.
>
> (2) Deviation from the guidelines may be appropriate in other cases when the court finds it is in the best interest of the child(ren) including, but not limited to, the following:
>
> > (a) In cases where the Department of Human Services has taken custody of the child(ren) pursuant to a neglect, dependant [sic], or abuse action and where the parent(s) is/are making reasonable efforts to secure the return of the child(ren) to the family; and/or
> >
> > (b) In cases where physical custody of the child(ren) is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation as defined in 1240–2–4–.02(6).
>
> . . .
>
> (4) In instances of extreme economic hardship, such as in cases involving extraordinary medical needs not covered by insurance or other extraordinary special needs for the children of the obligor's current family, [children living in the home with the obligor for whom the obligor is legally

responsible] deviation from the guidelines may be considered in order to achieve equity between the parties when the court so finds.

(5) In deviating from the guidelines, primary consideration must be given to the best interest of the child(ren) for whose support the guidelines are being utilized.

■ With the regulatory background in mind, we turn now to the contentions of the parties. Curtis Jones argues that trial courts have only limited discretion to deviate from the guidelines, and because the guideline percentages are "minimums," the discretion that exists pertains mainly to upward, not downward, deviation. He argues that the factors relied upon by the trial court to justify the substantial downward deviation here—the father's slight misrepresentation of income, his exaggerated needs and "somewhat extravagant use of funds," coupled with the mother's use of her increased income for housing and education—are not contemplated by the guidelines. Thus, he asserts, the trial court erred by not awarding support in accordance with the guidelines.

On the other hand, Dorothy Jones points out that trial courts are authorized to deviate from the guidelines when their application would be "inappropriate" or "unjust"; and she notes that this authority may be employed not only to further the best interest of the child, but also to achieve "equity between the parties." She argues that this power encompasses downward as well as upward deviation, citing in support of this contention *Nash v. Mulle*, 846 S.W.2d 803, 805 (Tenn. 1993), where we stated that "[the guidelines] are subject to deviation upward or downward when the assumptions on which they are based do not pertain to a particular situation." Dorothy Jones then contends that the trial court found, for the reasons stated in its order, that application of the guidelines was inappropriate because the equities of the situation demanded otherwise. Therefore, she concludes, its judgment should be affirmed.

■ This latter argument construes the trial court's authority to deviate downward too broadly. While § 36–5–101(e)(1) does authorize deviation in order to ensure equity between the parties, and while downward deviation is clearly not prohibited, the trial court's authority to do so must be considered in light of the provisions dealing with such deviation—Rule 1240–2–4–.04(2) and (4). Although not exclusive, those subsections provide for downward deviation in three instances: (1) where DHS has taken custody of the child(ren) pursuant to a neglect, dependency, or abuse action; (2) where the child(ren) spend more visitation time with the obligor than is assumed by the guidelines [5]; and (3) in cases in which the obligor is subjected to an "extreme economic hardship," such as where other children living with the obligor have extraordinary needs. Therefore, the guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the guidelines; and where the obligor is saddled with an "extreme economic hardship." Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed, these specific instances nevertheless are a powerful indication as to the *types* of situations in which it is contemplated under the guidelines.

We hold that the trial court has failed to articulate sufficient grounds to rebut the presumption that the guidelines are applicable. Dorothy Jones is under no economic hardship whatsoever; her income has nearly doubled since the divorce was granted, and she has, to our knowledge, no other dependents. The record indicates, moreover, that her work and school schedule have prevented her from visiting her children on a regular basis; therefore, she is not entitled to pay less than the guideline percentage on that ground. In short, while Curtis Jones may not have been perfectly forthright concerning his finances and child care expenses, and while his spending habits may not be a model of restraint, these grounds are clearly not sufficient to

**5.** If the child(ren) spend more time with the obligor than is assumed by Tenn.Comp.R. & Regs., ch. 1240–2–4.02(6), see note 4 *supra,* the obligor's child support payments should be reduced.

justify a downward deviation from the guidelines. Because the trial court has failed to make "written finding[s] that the application of the child support guidelines would be unjust or inappropriate in [this] case, in order to provide for the best interest of the children or the equity between the parties," § 36–5–101(e)(1), the judgment is reversed, and the cause remanded for further proceedings.

BIRCH, C.J., and ANDERSON, REID and WHITE, JJ., concur.