IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## DEBORAH ANN HANSEN v. OLE HANSEN

**Direct Appeal from the Circuit Court for Hamilton County
No. 97DR2456      Jacqueline E. Schulten, Judge**

**No.  E1999-02666-COA-R3-CV - Decided April 26, 2000**

This is a divorce case.  The trial court entered a judgment[1] establishing a residential schedule for the parties' minor child; designating Deborah Ann Hansen ("Mother") the "primary custodian" of the child; and ordering Ole Hansen ("Father") to pay child support of $315 per month.  Father appeals, arguing that the trial court erred in refusing to alternate the designation of primary residential parent between the parties on an annual basis when, according to Father, the parenting plan adopted by the trial court demonstrates that the parties are, in fact, equal custodians of the child.  He also contends that the trial court erred when it stated that the designation of one parent as the primary residential parent is a designation "in name only."  In addition, Father contends that the trial court erred in setting his child support obligation.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

Susano, J., delivered the opinion of the court, in which Franks and Swiney, JJ., joined.

David E. Fowler, Chattanooga, Tennessee, for the appellant, Ole Hansen.

Don W. Poole, Chattanooga, Tennessee, for the appellant, Deborah Ann Hansen.

**OPINION**

---

[1] The terms of the judgment pertaining to custody and related issues are subject to the provisions of T.C.A. § 36-6-401, *et seq*., (Supp. 1999).  This statutory scheme addresses "a pilot project with a different approach to dispute resolution in child custody and visitation matters."  T.C.A. § 36-6-401(a)(2).  The pilot project is being implemented in Hamilton County.  *See* T.C.A. § 36-6-401(b)(7).

I. *Background*

Mother filed a complaint for divorce, seeking custody of the parties' child, Lindsay Karyn Hansen ("the child,"), who was 9-1/2 years old at the time of the hearing below. The parties participated in mediation, but were unable to resolve all of the issues pertaining to the child's custody. At the outset of the court proceedings below, the parties stipulated grounds for divorce. Mother submitted a permanent parenting plan that specified she would be the custodial parent. The plan also contains a residential schedule providing that the child's primary residence would be with Mother and that the child would be with Father from 5:00 p.m. Thursday until Monday at 8:00 a.m. every other week, Friday at 3:00 p.m. until Saturday at 8:30 a.m. on alternate weekends, two weeks during the summer, one week at Christmas, and a division of all holidays. Father did not sign the parenting plan. As previously indicated, the trial court adopted the parenting plan signed and filed by Mother and incorporated it by reference into the divorce judgment. Apparently, Father did not disagree with the allocation of the child's time between the parents; but he strenuously argued to the trial court, and argues now, that because the residential provisions of the parenting plan reflect a "50-50 agreement" between the parties as to their time with the child, that the designation of custodial parent should alternate every year between the parties. Mother disputed Father's characterization of the parenting plan as a "50-50 agreement."

After the parties rested, the trial court announced its approval of the parenting plan and its appointment of Mother as the custodial parent. The trial court rejected Father's proposal that the designation of custodial parent be alternated annually, noting that the designation "is really in name only," which, the trial court explained as follows:

> It really means nothing more than that because [Father has] this child probably more, if you look at the hours of the day, it's more, if not equal to, what this lady has in terms of time, in terms of real time, not when [the child] is in school or not when she's off on camping trips or not when she's in Scouts or whatever her activities are.
>
> And I'm not a firm believer because all that does is make the parents feel warm and fuzzy. It doesn't do a thing for the child. She doesn't care who is called the custodial parent or the primary custodian. She knows you're mom and you're dad. Isn't that the way it ought to be?
>
> So I'm going to approve your agreement[2] that the primary

---

[2]While Father apparently agreed to some of the terms of the parenting plan, he certainly did not agree that Mother should be designated as the sole "primary custodian" absent a change of circumstances.

custodian[3] will be [Mother].

## II. *Standard of Review*

A trial court has broad discretion in determining matters of custody and visitation. *Parker v. Parker,* 986 S.W.2d 557, 563 (Tenn. 1999); *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn.Ct.App. 1996). Such determinations are factually driven and involve consideration of several factors. *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 485 (Tenn.Ct.App. 1997). Our review is *de novo* upon the record of the proceedings below; however, the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise." Rule 13(d), Tenn. R. App. P.; *see also Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn.Ct.App. 1996).

## III. *Custodial Parent*

### A.

Father argues that the trial court abused its discretion in designating Mother as the primary residential parent. He contends that the residential provisions[4] of the parenting plan "reflect[] equality" between the parents, and thus, so the argument goes, the designation of primary residential parent should alternate between the parties on an annual basis.

In support of his argument, Father cites the comments made by the trial court that were quoted earlier in this opinion, in which the trial court remarked that Father has the child for more hours of the day "in terms of real time." Father argues in his brief as follows:

> In this case, the parties have sought for equality in the "residential provisions." Even when it came to time with the child, equality of "real time" was achieved. One parent has more nights with the child, but the other actually has more "real time" with the child. Consistent with the legislative goals of the new law, the parties sought to foster the child's relationship with each parent. [Father], by asking that the designation of custodial parent alternate each year, sought to further that equality. In denying that request, the court created the only

---

[3]The relevant statutory scheme does not use the term "primary custodian." In using this language, the trial court apparently merged the concepts of "custodial parent," *see* T.C.A. § 36-4-402(1), and "primary residential parent," *see* T.C.A. § 36-4-402(5).

[4]"Residential provisions" include the parenting schedules, time in residence at each parent's house, decision-making allocation, and parenting function allocation." T.C.A. § 36-6-402(6).

inequality in the relationship between the parties and between the parties and their child.

We do not find error in the trial court's refusal to alternate the designation of custodial parent on an annual basis. Although many of the provisions of the parenting plan grant the parties "equal" rights and responsibilities with respect to the child, the residential schedule clearly establishes Mother as the primary residential parent, that is, the parent who has the child more than fifty percent of the time. *See* T.C.A. § 36-6-402(5). The statute contemplates that the designation of "primary residential custodian" will be based upon an analysis of the *total time that the child is under the legal care and supervision of each parent* -- a concept which basically equates to the concept of residence. We find nothing in the relevant statutory scheme to suggest that a court should base the designation of custodial parent on an analysis of the periods when the child is awake and in the company of a given parent -- the concept that we understand Father is suggesting when he refers to "real time" with the child. Our interpretation is in keeping with the statutory definition of "primary residential parent" which focuses on the concept of "with whom the child *resides*," *see* T.C.A. § 36-6-402(5) (emphasis added), rather than on the more narrow test of "real time" or quality time suggested by Father. When the parenting plan is examined to determine which parent has "more than fifty percent...of the [child's] time," *see id*., viewed in the context of the respective periods of care and supervision, Mother clearly qualifies as the statutory "primary residential parent." *Id*. Our approach to the concept of "primary residential custodian" also recognizes that a parent's responsibilities do not end when a child is at school or asleep or otherwise outside the presence of that parent. Rather, such responsibilities continue during the entire time that a child is under the general care and supervision of a parent, regardless of what the child is doing or where he or she is doing it.

Father claims that the parenting plan approved by the trial court grants him approximately 152 days of time with the child.[5] According to our calculations, he has approximately 130 days.[6]

_____

[5]Our characterization of Father's claim is based upon his assertion that he has 90% more time with the child than the standard 80 days of visitation mentioned in the case of *Casteel v. Casteell*, C/A No. 03A01-9703-CV-00073, 1997 WL 414401 (Tenn.Ct.App. E.S., filed July 24, 1997)(perm.app. denied March 2, 1998).

[6]We calculate his time with the child as follows:

|  | Weeks | Days |
|---|---|---|
| Summer | 2 | 14.0 |
| Christmas | 1 | 7.0 |
| 5 p.m. Thurs.-8 a.m. Mon. (alternate weeks) | | |
| (3.625 days x 24.5 weeks) | | 88.8 |
| 3 p.m. Fri.-8:30 a.m. Sat. (alternate weekends) | | |
| (.729 days x 24.5 weeks) | | 17.9 |
| Share of holidays - 48 hrs. (est.) | | 2.0 |
| Father's time with child under parenting plan | | 129.7 |

In any event, Mother clearly has more than 50% of the child's time. *See* T.C.A. § 36-6-402(5). Thus, to the extent that the labeling of Mother as the "custodial parent" and the "primary residential parent" creates, in Father's words, an "inequality," it is one that was created by the General Assembly when it defined "primary residential parent" as the one "with whom the child resides more than fifty percent (50%) of the time"; and when it defined "custodial parent" with reference to the concept of "primary residential parent." *See* T.C.A. § 36-6-402(1) and (5). *See also* T.C.A. § 36-6-413.

Upon reviewing the entire record, we cannot say that the trial court abused its discretion in designating Mother as the primary residential parent and custodial parent of the child; nor do we find error in the trial court's decision not to alternate these designations on an annual basis. This issue is found adverse to Father.

B.

Father also argues that the trial court erred as a matter of law in finding the term "primary residential parent" to be a designation "in name only" and in finding the "primary residential parent" to be the equivalent of the "custodial parent."

T.C.A. § 36-6-402(5) defines "primary residential parent" as "the parent with whom the child resides more than fifty percent (50%) of the time." T.C.A. § 36-6-402(1) defines "custodial parent" as follows:

> "Custodial parent" means where, in order to comply with other federal and state laws, it is necessary to designate one (1) parent as the custodial parent, the primary residential parent may be deemed to be the custodial parent where agreed to by the parties or ordered by the court; provided, that such designation does not affect the decision making process as delineated in the parties' parenting plan.

While we do not totally agree with the trial court's characterization of the designations of custodial parent and primary residential parent as designations "in name only," we find no reversible error in the court's comments. As we have pointed out, both of these designations are specifically defined in the applicable statutory scheme, and, hence, they have real legal meaning. *See* T.C.A. § 36-6-402(1) and (5). However, with respect to the designation of "custodial parent," the trial court's characterization of "in name only" is correct if the trial court meant to observe that the designation does not affect the parents' rights and responsibilities as set forth in the parenting plan. T.C.A. § 36-4-402(1) ("[the custodial parent] designation does not affect the decision making process as delineated in the parties' parenting plan.").

---

24.5 weeks are the number of alternate weeks/weekends in the 49 weeks left after subtracting Father's time with the child in the summer and at Christmas.

Father contends that the trial court erred in designating the primary residential parent as the custodial parent *per se*. He relies upon T.C.A. § 36-6-402(1), which, in pertinent part, states that "the primary residential parent *may* be deemed to be the custodial parent...." (Emphasis added.) Father's argument, however, overlooks the language of T.C.A. § 36-6-413, which provides as follows:

> Solely for the purpose of all other state and federal statutes which require a designation or determination of custody, a parenting plan *shall* designate the parent with whom the child is scheduled to reside a majority of the time as the custodian of the child; provided, that this designation shall not affect either parent's rights and responsibilities under the parenting plan. In the absence of such a designation, the parent with whom the child is scheduled to reside a majority of the time shall be deemed to be the custodian for the purposes of such federal and state statutes.

(Emphasis added.) The parenting plan adopted by the trial court provides that Mother is the primary residential parent. As we have previously indicated, this designation is in keeping with the allocation of the totality of the child's time. Under T.C.A. § 36-6-402(1), the trial court was authorized to designate the primary residential parent as the custodial parent. As to "all other state and federal statutes," *see* T.C.A. § 36-6-413, the designation was mandatory, as shown by the use of the word "shall" in the statute. Therefore, whether the trial court made the designation under T.C.A. § 36-6-402(1) or under T.C.A. § 36-6-413 or under both, we find no error in the trial court's action. This issue is also found adverse to Father.

IV. *Child Support*

Father next argues that the trial court erred in setting child support at $315 per month.

The parties stipulated at trial that Father had a monthly gross income of $2,375. According to the Child Support Guidelines ("Guidelines"), the monthly support obligation based upon this level of income is approximately $400 per month. *See* Tenn. Comp. R. & Regs., Ch. 1240-2-4-.03 and schedule dated February 9, 1999, accompanying the Guidelines. The trial court reduced the obligation to $315 per month, for the stated reason that the child will be spending a greater than normal amount of time with Father.

Father argues that the reduction is inadequate because, so the argument goes, he spends 90% more time with the child than contemplated by the Guidelines.[7] He further argues that the manner in which the trial court calculated the reduction is flawed because in cases where the child spends

---

[7]As indicated earlier in this opinion, we disagree with Father's computation of his time with the child.

nearly equal time with each parent, the award of support creates a windfall for the custodial parent.

The Guidelines are based upon an assumption that the child support obligor has visitation with the child every other weekend, two weeks during the summer, and two weeks during holidays. *Jones v. Jones,* 930 S.W.2d 541, 543 n.4 (Tenn. 1996). In cases where visitation is more equal, courts must make a case-by-case determination of the appropriate amount of support. Tenn. Comp. R. & Regs., Ch. 1240-2-4-.02(6); *see also Jones,* 930 S.W.2d at 545 (holding downward deviation appropriate where obligor spends more time with child than assumed by the Guidelines). In calculating the appropriate amount by which to reduce Father's obligation, the trial court apparently applied the method set forth in *Casteel v. Casteel,* C/A No. 03A01-9703-CV-00073, 1997 WL 414401 (Tenn.Ct.App. E.S., filed July 24, 1997)(perm.app. denied March 2, 1998).[8]

We do not agree with Father's assertion that his child support is, in some way, contrary to the Guidelines. Rather, we find that the amount of support set by the trial court, and its rationale for doing so, are consistent with the Guidelines and take into account Father's more-than-usual time with the child. The Guidelines-directed support for one child, to be paid by an obligor earning a gross salary of $2,375 per month, is approximately $400 per month.[9] To account for Father's time with the child, the court below reduced his child support obligation to $315 per month. We find no error in the amount of the trial court's reduction.

## V. *Conclusion*

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law.

---

[8]At the hearing, Mother's counsel applied the forumula found in the *Casteel* case to arrive at a figure of $316. Although the trial court did not explicitly adopt this method, we infer that the trial court applied the rationale of *Casteel* because the trial court's award of $315 is close to the amount calculated by Mother's counsel at the hearing.

[9]See schedule dated February 9, 1999, that accompanied the Guidelines promulgated by the Department of Human Services: $400 is to $2,375 as $396 is to $2,350.