IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE


**JESSE ROBERTSON MILTIER, III   v. REBECCA H. MILTIER (BUHLS)**


**Direct Appeal from the Chancery Court for Carter County**
**No. 20525        Hon. Jean A. Stanley, Chancellor**

---

**No. E1999-00887-COA-R3-CV - Decided May 31, 2000**

---


This is an appeal by Father of the Trial Court's denial of his Petition to reduce child support and the Trial Court's Order requiring him to turn over to Mother various photographs taken by him of her current residence and enjoining him from displaying the photographs or taking any other photographs of Mother's home. For the reasons herein stated, we affirm the Judgment of the Trial Court insofar as it denies the Petition to reduce child support but reverse the Judgment of the Trial Court as to the photographs and vacate the injunction.

**Tenn.R.App.P. 3; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded.**

Swiney, J., delivered the opinion of the court, in which GODDARD, J., and SUSANO, J., joined.

Jesse Robertson Miltier, III, Pro Se.

Robert J. Jessee, Johnson City, for the Appellee, Rebecca H. Miltier (Buhls).


**OPINION**

**Background**

        Jessee Robertson Miltier, III ("Father") and Rebecca H. Miltier (Buhls) ("Mother") were married on March 30, 1985, and have three children, ages 15, 13 and 12. They divorced in 1993. Father works as a registered nurse at the Veteran's Administration Medical Center in Johnson City, Tennessee. His annual income is $45,020, for a monthly gross income of $3,752.50. He alleges expenses of approximately $2,207 per month exclusive of child support. His monthly child

support is $1,062.97 as ordered by the Trial Court on December 8, 1997, after a hearing on Father's prior Petition for a downward departure from the Child Support Guidelines, which the Trial Court denied at that time.

Mother remarried in 1996 and moved from Tennessee to Bristol, Virginia, with these parties' three children and her new husband. Father alleges that Mother's move to Virginia has caused him to incur additional expense in traveling from Johnson City to Bristol, Virginia, to pick up and return his children for visitation and for long distance telephone calls to the children. He complains of excessive debt from legal fees, court costs and missed days from work during the past three years owing to his efforts to resolve "repeated complaints of denied scheduled court ordered visitation." He also says that, in December 1998, Mother was considering changing employment to become the school nurse at Virginia Middle School and "requested [Father] to obtain family Blue Cross/Blue Shield Medical coverage on their three (3) children." Father obtained the coverage at a cost of $34.50 bi-weekly. The record indicates that Mother works as a registered nurse at Johnson City Medical Center, a job she has held for over thirteen years.

On July 28, 1999, Father filed this Petition to Modify Child Support, requesting that his child support be decreased. He attached an Affidavit alleging "numerous" outstanding debts "total approximately $120,000." He alleged personal expenses of approximately $2,207 monthly and apparently an additional $500 per month which he spends on the children, in addition to his child support payments. Mother filed her response on August 26, 1999. In that response, however, she also alleged, as counter movant:

1. That the counter respondent, without the permission of the counter movant, photographed her home where she currently lives with the parties' children and her husband. The counter respondent then had these pictures blown up and placed on display at Wal-Mart and other areas where Dads Against Discrimination were having rallies showing in his opinion where his child support was going.

2. Counter movant avers that this action by the counter respondent is an invasion of her privacy, a trespass, and not in the best interest of the children who are required to attend the rallies with him.

3. Counter movant requests that a restraining order issue restraining the counter respondent from further display of the counter movant's home and that he be immediately ordered to return the photographs and negatives to her.

The Trial Court held a hearing on Father's Petition on September 27, 1999, at which Father appeared pro se and Mother was represented by counsel. The Trial Court found that Father has had an increase in income to the amount of $3,752.50 per month since the last hearing on

November 13, 1997. The Court further found that Father "has failed to show a material change of circumstances to justify a reduction in child support." Accordingly, the Trial Court denied Father's Petition for reduction in child support. The Trial Court also ordered Father to "immediately return to the Rebecca Buhls any and all photographs of her home along with the negatives and shall be restrained in the future from displaying the photos or taking any other photos of Rebecca Buhls's home." Father appeals.

## Discussion

As stated, Father filed this appeal pro se. We have reviewed his "Statement of the Issues," which we can fairly condense as follows:

1. The manner in which the Trial Judge conducted the hearing was so biased and prejudicial that no meaningful review of the issues before the Court was obtained, therefore the Trial Judge has committed judicial misconduct.

2. The Trial Court erred in denying Petitioner's Motion for Modification to reduce his child support obligation.

3. The Trial Court erred in ordering Petitioner to "return" to Respondent photographs and negatives which were never hers, and in enjoining Petitioner from taking any more photographs of Respondent's home.

Mother has raised the issue that Father's appeal is frivolous.

We review the record of the Trial Court *de novo* with the presumption that the decision of the Trial Court with respect to the facts is correct unless the evidence preponderates against such factual determinations. T.R.A.P. 13(d); *Brooks v. Brooks*, 992 S.W. 2d 403,404 (Tenn. 1999).

At oral argument before this Court, Father announced that he has filed a complaint with the Court of the Judiciary concerning the Trial Court's manner of conducting the hearing of this Petition. Since that is the appropriate venue for any such claims, we decline to address Father's first issue here. However, from our review of the record, such as it is, we find that the Trial Court did give Father an opportunity to present proof as to why the Trial Court should deviate downward from the child support guidlines. We also agree with the Trial Judge's alleged statement to Father that he would be well-served by obtaining counsel to assist him in litigating these matters should the issue of child support arise again in the future.

Father next raises the issue that the Trial Court erred in declining to reduce his child support obligation. T.C.A. § 36-5-101(e)(1) provides:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a

rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

The Child Support Guidelines, set out in the Rules of Tennessee Department of Human Services, Tenn. Comp. R. & Regs. Ch. 1240-2-4, prescribe, as pertinent:

(5)     After determining the net income of the obligor, that amount is to be rounded up to the next dollar. That amount is then multiplied by the percentage below that corresponds to the number of children for whom support is being set in the instant case. The percentages are:

| No. of children | 1 | 2 | 3 | 4 | 5 or more |
|---|---|---|---|---|---|
| % of income | 21% | 32% | 41% | 46% | 50% |

Tenn. Comp. R. & Regs. Ch. 1240-2-4-.03(5).

That Regulation also provides Criteria for Deviation From Guidelines, which permits a downward deviation "if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule." The Regulation also provides for a deviation "[i]n cases where physical custody of the child(ren) is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation as defined in 1240-2-4.02(6)." Other reasons for downward departure are set forth in 1240-2-4-.04(3), (4), (5):

(3) . . . When the net income of the obligor exceeds $10,000 per month, the court may consider a downward deviation from the guidelines . . . .

(4) In instances of extreme economic hardship, such as in cases involving extraordinary medical needs not covered by insurance or other extraordinary special needs for the child(ren) of the obligor's current family, [child(ren) living in the home with the obligor for whom the obligor is legally responsible] deviation from the guidelines may be considered in order to achieve equity between the parties when the court so finds.

(5) In deviating from the guidelines, primary consideration must be given to the best interest of the child(ren) for whose support the guidelines are being utilized.

In interpreting the Regulations, our Supreme Court has stated:

While § 36-5-101(e)(1) does authorize deviation in order to ensure equity between the parties, and while downward deviation is clearly not prohibited, the trial court's authority to do so must be considered in light of the provisions dealing with such deviation – Rule 1240-2-4-.04(2) and (4). Although not exclusive, those subsections provide for downward deviation in three instances: (1) where DHS has taken custody of the child(ren) pursuant to a neglect, dependency, or abuse action; (2) where the child(ren) spend more visitation time with the obligor than is assumed by the guidelines: and (3) in cases in which the obligor is subjected to an "extreme economic hardship," such as where other children living with the obligor have extraordinary needs. Therefore, the guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the guidelines; and where the obligor is saddled with an "extreme economic hardship." Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed, these specific instances nevertheless are a powerful indication as to the *types* of situations in which it is contemplated under the guidelines.

*Jones v. Jones,* 930 S.W.2d 541, 545 (Tenn. 1996). The Supreme Court in *Jones* held that the Trial Court had failed to articulate sufficient grounds to rebut the presumption that the Guidelines were applicable. The Court found that the obligor was not under economic hardship, her income had increased, she had no other dependents, and her visitation schedule was less than contemplated by the Guidelines because her work schedule had increased. Accordingly, the Supreme Court reversed the Trial Court's downward departure from the Guidelines.

The evidence in the record before us does not preponderate against the Trial Court's finding that Father failed to prove that he meets any of the above-quoted criteria justifying a downward departure from the Child Support Guidelines. The record reflects that Father's income has increased, and he has, to our knowledge, no other dependents. Finally, the evidence in the record does not preponderate against the Trial Court's finding that Father failed to prove "extreme economic hardship" as that phrase is defined by the Regulation and case law. Therefore, we hold the Trial Court did not err in declining to grant Father's Petition to reduce his child support payments.

Finally, Father complains that the Trial Court erred in requiring him to "return"

photographs of Mother's new home to her and to stop taking and displaying such photographs in the future. We agree with Father. The Trial Court provided no legal basis for that part of its Order, and we find none. There is no dispute that Father took the photographs, made one or more posters from the photographs, and perhaps displayed a poster or posters in a public place, all of which is constitutionally protected under the First Amendment to the U. S. Constitution.[1] Except in limited situations, none of which are applicable here, "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *H & L Messengers, Inc. v. City of Brentwood*, 577 S.W. 2d 444,451 (Tenn. 1979), Quoting *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed. 2d 212, 216 (1972). From the record before us, and statements made by Father at oral argument, it is clear Father believes that he, as his children's father, has been unfairly treated by the legal system. Father has the right to hold that opinion and the right to express that opinion. Mother makes no contrary argument on appeal. We reverse the Trial Court's judgment only insofar as it requires Father to turn over his personal property, the posters and photographs, to Mother, and we vacate the Trial Court's injunction forbidding him to take and publicly display such photographs in the future.

Mother raises the issue that Father's appeal is frivolous. Since we have granted relief to Father on one of the issues he has raised, we find the appeal is not frivolous.

### Conclusion

The judgment of the Trial Court is affirmed in part, reversed in part, and this cause remanded to the Trial Court for such further proceedings, if any, as may be required, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the parties equally.

---

[1]There has been no allegation that Father has committed a criminal intrusion as defined in T.C.A. § 39-17-315, Stalking.

-6-