IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2011 Session

# MARIA AMEZCUA v. SAMUEL AMEZCUA

**Appeal from the Circuit Court for Davidson County**
**No. 01D241     Carol Soloman, Judge**

---

**No. M2011-00459-COA-R3-CV - Filed March 26, 2012**

---

In this post-divorce proceeding, Father appeals a judgment for child support arrearages and award of attorney's fees to Mother.  Finding that the court erred in its determination of the amount of arrearages, we reverse the judgment and remand for further proceedings.  The award of attorney's fees is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jon Steven Jablonski, Nashville, Tennessee, for the Appellant, Samuel Amezcua.

Tyree B. Harris, IV, and Katherine Anne Brown, Nashville, Tennessee, for the Appellee, Maria Amezcua.

**OPINION**

## I.  Facts and Procedural History

Samuel Amezcua ("Father") and Maria Amezcua ("Mother") were divorced on August 3, 2011. The parties executed a Marital Dissolution Agreement ("MDA") and a Permanent Parenting Plan which were incorporated into the Final Decree of Divorce.  The parenting plan named Mother the primary residential parent of the parties' four children and set Father's child support obligation at $1,128.00 per month;[1] the plan included a provision entitled "Other provisions for financial support" which provided as follows:

---

[1]  The parenting plan stated that Father's income was $38,810 per year.

As long as Samuel Amezcua continue [sic] to be employed by Curb Records, the Amezcua Children's Trust Fund shall be funded annually directly by Curb Records or one of its associated foundations as directed in separate agreements.

The "separate agreement" referenced in the parenting plan was a document, prepared by a mediator, which stated, in relevant part:

Samuel Amezcua is currently an employee of Mike Curb d/b/a Curb Music Company. Samuel Amezcua does hereby agree to continued employment. Further, Samuel Amezcua does agree that he will waive up to $10,000 annual bonus that he would receive as a result of his employment and as he has received in the past in exchange for Mike Curb d/b/a Curb Music Company gifting to the Amezcua Children's Trust $10,000 each and every year by February 1st and beginning on February 1st, 2002. Said gift payments shall continue as long as Samuel Amezcua continues his employment and until the minor child . . . has reached the age of eighteen (18) or she has graduated with her regular graduating class which ever comes later. It is anticipated by the parties to this agreement that the final payment shall occur February 1st, 2011.

The agreement was never signed by Mother, Father, or Mike Curb.

On July 5, 2005, after his eldest daughter reached the age of eighteen, Father filed a petition seeking to modify his support obligation. Mother answered and filed a counter petition alleging, *inter alia*, that Father "consistently failed and refused to effect the annual funding of the Amezcua Children's Trust Fund"; Mother sought to have Father found in contempt based on his failure to fund the trust. On June 12, 2006, the trial court entered an order bifurcating the issue of child support modification and contempt.[2] On July 26, 2006, Father filed a second Petition to Modify Child Support when his second eldest child attained the age of eighteen.

On March 30, 2007, the parties entered into an Agreed Order of Modification, signed by or on behalf of all counsel, in which Father's support obligation was set at $903.00 per month for the two remaining minor children. The order also recited that Father had overpaid support by $3,019.00 and would be credited $100 per month on future support payments until the amount overpaid was reached. On April 25, 2008, Father filed a motion seeking to have the counter petition for contempt dismissed for failure to prosecute; the court denied the

_____

[2] The order also provided that the modification matter would be set for hearing by the Department of Child Support Services of Davidson County and the contempt matter be set by agreement of the parties.

motion on May 29 and ordered that a hearing be held within sixty days.[3] On November 14, 2008, after his third child reached the age of majority, Father petitioned the court to modify his support. The petition also sought to require Mother to refinance the first mortgage on the property awarded to her in the divorce in accordance with the divorce decree.

On July 19, 2010, the trial court heard Mother's counter petition for contempt and Father's petition to modify child support and on November 16 the court entered an order reducing Father's child support obligation to $705.00 per month. With respect to the contempt petition, the court stated:

> while the Court could not enforce the terms and conditions of the unsigned trust itself, it could modify retroactively the appropriate amount of child support which otherwise would have become due and owing in accordance with the State of Tennessee Department of Human Services Guidelines had not periodic bonuses received by the Petitioner and Counter-Respondent, Samuel Amezcua, which were to have funded the trust had [sic] not been exempted from the income upon which the periodic support and maintenance for the minor children of the parties had been calculated . . . .

The trial court awarded Mother a judgment for $22,208.42, based on the court's recalculation of Father's annual income from the date of divorce "to include periodic bonuses which he received that were expressly exempted from his income which should have been utilized to calculate the periodic support and maintenance for the minor children . . . ." The court denied Father's request for Mother to refinance the mortgage and denied Mother's counter petition inasmuch as she sought to "enforce the terms and conditions of a trust which she believed was being created contemporaneously with the execution of a Marital Dissolution Agreement incorporated into the Final Decree Of Divorce by and between the parties . . . ." Finally, Mother was awarded $29,013.15 in attorney's fees.

On December 9, 2010, Father filed a Motion to Vacate and/or to Alter or Amend which was heard on January 18, 2011. On February 3, 2011, the trial court entered an order vacating the previous award of attorney's fees and awarding $28,750.65 as the "reasonable and necessary" amount of attorney's fees; in all other respects, the motion was denied.

---

[3] The record does not show why a hearing was not held within the sixty day period ordered by the court.

Father appeals raising the following issues:

I.  Whether the trial court erred in retroactively modifying Father's child support obligation?

II. Whether the trial court erred in awarding Mother attorney's fees?

## II. Standard of Review

We review the trial court's factual findings *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. *Pylant v. Spivey*, 174 SW.3d 143, 151 (Tenn. Ct. App. 2003).

## III. Analysis

In resolving the issues raised in this appeal, it is necessary for us to consider the integrity of the child support provisions incorporated in the Final Decree of Divorce. Although this issue has not been specifically raised by either party, we consider it pursuant to the authority granted at Tenn. R. App. P. 13(b).[4] Because we find that the provisions for child support, and the trial court's approval of such provisions, were not in compliance with the requirements of Tennessee law, we vacate that portion of the Final Decree approving the parties' agreement as to child support; as a consequence, we reverse the judgment assessing the arrearage and remand the case for further proceedings.

### A. Child Support

In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 36-5-101(e)(2). Tennessee's Child Support Guidelines have the force of law. *John v. John*, 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996). An award of child support derived from a proper application of the Guidelines is presumed to be in the best interest of the child. *Neal v. Neal*, No. M2003-02703-COA-R3-CV, 2005 WL 1819214, at *2 (Tenn. Ct. App. Aug. 2, 2005). However, a trial court may, in its discretion, deviate from the amount of support required by the Guidelines. *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996). When making a deviation from the presumptive amount of support, the court must make written findings in its order detailing "the basis for the

---

[4] Tenn. R. App. P. 13(b) permits appellate courts to consider issues not raised by the parties "in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process."

deviation and the amount the child support order would have been without the deviation." Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). The Guidelines further explain the procedure for deviation and require that:

> (c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:
>
>> 1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
>>
>> 2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
>>
>> 3. How, in its determination,
>>
>>> (i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
>>>
>>> (ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(c).

The Guidelines also state that in making a determination regarding a deviation from the presumptive amount of support, the trial court:

> [S]hall consider all available income of the parents as defined by this chapter and shall make a written finding that an amount of child support other than the amount calculated under the Guidelines is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case immediately under consideration.

Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(a)(1).

At issue in this case are the bonuses Father received from his employment with Curb Records. Under the Guidelines, "bonuses" are to be included in the calculation of gross income for the purposes of setting a child support obligation. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1)(v). Here, the final decree of divorce incorporated a permanent parenting plan in which Father agreed to fund a trust for the benefit of his children; in the related unsigned agreement, the parties negotiated that Father would waive up to $10,000 of his annual bonus to fund the trust.[5] The amount of Father's bonuses was not included in the calculation of his child support obligation as is required under Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1)(v). The trial court, without inquiry or explanation, approved the child support provisions of the parenting plan without discussing the reasons for deviating from the Guidelines or making findings that the deviation was in the best interest of the children.

In an analogous case, *Neal v. Neal*, No. M2003-02703-COA-R3-CV, 2005 WL 1819214 (Tenn. Ct. App. Aug. 2, 2005), this Court considered an appeal of the dismissal of a petition and counter-petition for modification of the child support and parenting time provisions of a parenting plan. *Neal v. Neal*, No. M2003-02703-COA-R3-CV, 2005 WL 1819214 (Tenn. Ct. App. Aug. 2, 2005). The parties in *Neal* had proffered, for the court's

---

[5] Mother testified regarding her understanding of the trust provision in the MDA as follows:

Q: Now, tell the Court, if you would, what statements did [the mediator] make to you about why the trust was being prepared and how the money was going to be put into it.
A: She told me that she just talked with Mr. Curb and he would pay the bonus to the kids.
Q: And what money was supposed to go into that trust as you understood it?
A: $10,000.
Q: And where was that $10,000 supposed to come from?
A: From his bonus.
Q: From Mr. Amezcua's bonus?
A: Yes.
Q: And had you been informed or did you know during the time that these discussion took place how much income Mr. Amezcua was receiving from Mr. Curb?
A: Yes.
Q: You referred earlier to $48,000, so while these conversations were going on, did you know his regular income was $38,000 and he would get a $10,000 bonus?
A: Yes.
Q: Did [the mediator] make any statements to you about how much child support to which you would be entitled for your four daughters, based on Mr. Amezcua's income?
A: Yes.
Q: What did she tell you?
A: That she had to take $10,000 off and whatever was left, that's what I applied to get child support The other $10,000 is going to be for the girls and she cannot take child support from this $10,000.

approval, a parenting plan that failed to set child support for the children; the court incorporated the plan into the final decree without providing a reason for deviating from the Guidelines. *Id.* at *1. In the course of discussing the permanent parenting plan and final decree from which the modifications were sought, we found it necessary to vacate the "fatally flawed" permanent parenting plan. We did so, finding that the trial court "failed to follow the proper procedure in its award of child support," and failed to state its reasons for the downward deviation from the Guidelines as required by Tenn. Code Ann. § 36-5-101(e)(1)(A) and Tenn. Com. R. & Regs. 1240-2-4-.01 and .07. *Id.* at *2–3. The case was remanded for a trial of "all issues made under the pleadings." *Id.* at *3.

In *Neal*, as here, the parties were in large part, the "authors of their own misfortune," in that they negotiated a legally deficient parenting plan. *Id.* at *2. As in *Neal*, the trial court failed to explain the reason for approval of a plan that deviated from the presumptive amount of support. In this case, there is undisputed proof in the record that Father received bonuses from his employer, never established or funded a trust for the benefit of his children, and did not otherwise account for his bonuses, as required by Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1)(v). Accordingly, we vacate that portion of the Final Decree approving Father's child support obligation and the trust agreement, and remand the case for a determination of Father's income and the correct amount of support Father should have paid pursuant to the Guidelines since the date of the Final Decree and for the court to enter a judgment consistent therewith.[6]

The record in this case provides very little evidence relative to Father's bonuses. Father did not testify at trial, and there were no tax returns or bank documents entered into evidence reflecting the precise amount of Father's bonuses. Mike Curb, Father's employer, stated in his deposition, which was entered into evidence, that, "we've never had a fixed bonus for any employee and obviously not for the Amezcuas either." Mr. Curb testified somewhat equivocally regarding the bonuses he provided to Father, as evidenced by this line of testimony:

> And, you know, we – we just couldn't lock in a 10,000 bonus; although, the great irony is if you look at what Sam received over the – over this period, it's pretty close to that. You know, it's pretty close to 10- when you consider the family medical and his 401k match and his – and the bonus that we paid him and other things that we, you know, I – we gave him cars. And then, you

---

[6] Since the original amount of support was improperly determined, the determination of the correct amount is not a retroactive modification of support as contemplated by Tenn. Code Ann. § 36-5-101(f)(1).

know, I – we gave him both our jeeps, you know, to – so that he could sell them.

We did everything that we could to – I mean, we've done everything we can to keep Sam going and hopefully help his daughters, you know, in every way we can, you know, and . . .

Thus, the evidence preponderates against the trial court's finding that Father received a $10,000 bonus annually and we reverse the judgment assessing the arrearages. On remand, the court is directed to carefully consider evidence of the amount of Father's annual bonuses when determining income and the amount of child support.

### B. Attorney's Fees

We next address Father's contention that the trial court erred in awarding Mother $28,730.65 in attorney's fees. Father contends that Mother is not entitled to the fees because her attorney was representing her on a *pro bono* basis and that she never "incurred" any fees in the resolution of this matter. Father further argues that, in light of the fact that Mother's counsel is representing her *pro bono*, the award of attorney's fees provides a "windfall" to Mother and should be reversed. Father's contentions are without merit.

The decision to award attorney fees and the amount of fees awarded are matters resting within the sound discretion of the trial court. *Melvin v. Johnson–Melvin*, No. M2004–02106–COA–R3–CV, 2006 WL 1132042, at *9 (Tenn. Ct. App. Apr. 27, 2006). Tenn. Code Ann. § 36-5-103(c) addresses the award of attorney's fees in child support matters and provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). Our Supreme Court has explained that, "[i]n cases involving the custody and support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable

and appropriate." *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). Although "[t]here is no absolute right to such fees, . . . their award in custody and support proceedings is familiar and almost commonplace." *Id.* at 170. It is important to note that the purpose of attorney's fees in these matters "is to protect the children's, not the custodial parent's, legal remedies." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

We find no abuse of discretion in the trial court's award of fees in this case. The fact that Mother's counsel was representing her on a *pro bono* basis means only that Mother was not charged a fee for counsel's services; it does not require the court to disregard the statutory authority for such award. Contrary to the argument of Father, Mother receives no "windfall" from the award.

## IV. Conclusion

For the foregoing reasons, we reverse the judgment assessing Father's arrearage at $22,208.42 and affirm the judgment awarding Mother her attorney's fees. We vacate that portion of the Final Decree approving the parties' agreement as to child support and remand the case for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE