IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 15, 2005 Session

## TAMMY HOPKINS LINDSAY v. DWIGHT KELLEY LINDSAY

**Appeal from the Circuit Court for Davidson County**
**No. 00D-1778      Carol L. Soloman, Judge**

---

**No. M2005-00207-COA-R3-CV - Filed January 25, 2006**

---

Tammy Hopkins Lindsay ("Mother") and Dwight Kelley Lindsay ("Father") were divorced in December of 2000, but have returned to court numerous times since then. Most of the post-divorce controversy centers around the amount of Father's child support payment and the arrearages which have accrued since the divorce. After the most recent hearing, the Trial Court entered a detailed order resolving competing petitions filed by the parties. The only issue in this appeal concerns that portion of the Trial Court's order which requires Father to pay an additional $50 each time he fails to exercise co-parenting time on a weekend, and an additional $25 for each day that he fails to exercise co-parenting time on a holiday or during the summer. We vacate only this particular portion of the Trial Court's Order, and affirm the order as so modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit**
**Court Vacated in Part and Affirmed as Modified; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Tracey Robinson-Coffee, Nashville, Tennessee, for the Appellant Dwight Kelley Lindsay.

Mary Arline Evans and Alan D. Johnson, Nashville, Tennessee, for the Appellee Tammy Hopkins Lindsay.

## Background

The parties were divorced in December of 2000. The parties had a ten year old son and a six year old daughter at the time of the divorce. The Final Decree of Divorce adopted a Permanent Parenting Plan previously entered by the Trial Court. The Permanent Parenting Plan designated Mother as the primary residential parent and required Father to provide health insurance for the children and to pay child support of $228.70 per week. Father's co-parenting time also was set forth. In addition, Father was ordered to pay $3,000 toward Mother's attorney fees.

The parties were back in court numerous times over the next few years. For example, in June of 2001, the Trial Court entered an Order finding Father to be almost $2,200 in arrears on his child support payments. Father apparently had not paid anything toward the attorney fees he previously was ordered to pay and, accordingly, the Trial Court also awarded Mother's attorney a judgment against Father for $3,000.

In September of 2002, the parties were back in court concerning a dispute over Father's not maintaining a life insurance policy as previously ordered. The Trial Court ordered Mother to pay the monthly premiums for the life insurance policy, but required Father to reimburse Mother the same amount as alimony.

In June of 2004, Father filed a Petition to Modify Child Support. According to the petition, Father had been laid off from his job where he had been earning approximately $4,000 per month. Father claimed he was unable to secure alternate employment despite his best efforts. Father anticipated being eligible for unemployment compensation in the amount of $255 per week. Father also claimed that he would be unable to pay for health insurance on the children inasmuch as the COBRA payments would exceed $700 per month.

Mother responded to Father's petition by essentially denying that Father was entitled to a decrease in child support payments. Mother also filed a counter-petition seeking to have Father held in civil contempt of court. Mother claimed Father was in arrears on his child support payments, and that he had failed to pay his share of the children's medical bills not otherwise covered by health insurance.

A hearing was held on the competing petitions after which the Trial Court entered an Order which reduced the weekly amount Father was required to pay, "although the actual amount owed shall not be reduced." In other words, Father's child support obligation remained at $228.70 per week, with $75.00 being due and payable each week and the remaining $153.70 to accrue as an arrearage. Father was relieved of his obligation to maintain health insurance on the children, but he was ordered to reimburse Mother $56.75 per week for payments she was making toward health insurance for the children.

In August of 2004, Mother filed a petition seeking to have Father held in criminal contempt. Among other things, Mother claimed Father yet again was behind on child support payments and was not reimbursing her for health insurance coverage on the children. On September 16, 2004, the Trial Court entered an Order finding Father in criminal contempt on twelve charges and ordered Father to serve ten days in jail for each violation, for a total of 120 days.[1]

Another hearing was conducted in December of 2004. A comprehensive order discussing in detail each party's financial responsibilities regarding the care of their children was issued following this hearing. In this Order, the Trial Court specifically found that Father was "grossly underemployed" and that he was "not a truthful or credible witness." The Trial Court established how the parties were to communicate with each other as well as Father's co-parenting time. The Trial Court also established the amount of Father's arrearages in child support, health insurance reimbursement, and unpaid medical bills, all of which totaled $5,031.31. As to Father's child support payments, the Trial Court concluded:

> • That for a short period of time, until February 4, 2005, Mr. Lindsay should be given an opportunity to correct his underemployment and that commencing immediately and until February 3, 2005, he should pay child support in accordance with the Guidelines based upon his actual, current earnings, plus an additional Ten ($10.00) Dollars per week based upon his non-visitation;
>
> • That commencing Friday December 10, 2004 through Thursday, February 3, 2005, Dwight Lindsay shall pay the sum of Ninety-Six and 98/100 ($96.98) Dollars per week Guidelines child support plus Ten ($10.00) Dollars additional, for a total payment of One Hundred Six and 98/100 ($106.98) Dollars per week;
>
> * * *
>
> • That Mr. Lindsay should pay the aforesaid arrearage judgment of $5,031.31 at the rate of $50.00 per week, commencing December 10, 2004, until the principle (sic) balance and any interest accrued thereon from and after December 6, 2004 have been paid in full;
>
> * * *

---

[1] A separate appeal was taken from the order finding Father in criminal contempt. Via a separate opinion filed contemporaneously herewith, the finding of criminal contempt was vacated by this Court as all parties agreed on appeal that Father was not properly advised of his constitutional right to counsel prior to being held in criminal contempt.

- That commencing February 4, 2005, Dwight Lindsay's child support obligation shall return to the amount previously Ordered in November 2000, to wit: Two Hundred Twenty-Eight and 70/100 ($228.70) Dollars per week;

* * *

- That in the event Dwight Lindsay misses a weekend visitation with the two (2) minor children, he should within ten (10) days, pay Tammy Lindsay the sum of Fifty ($50.00) Dollars;

- That in the event Dwight Lindsay misses a holiday or summer visitation, he should, within ten (10) days, pay Tammy Lindsay the sum of Twenty-Five ($25.00) Dollars per day for each day missed ….

Father appeals raising only the following issue: "Whether the lower court can order an upward deviation of a specific amount each time [the] non-custodial parent fails to visit his child."

**Discussion**

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). We review child support decisions for abuse of discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000). However, a trial court's discretion is limited because such "discretion must be exercised within the strictures of the Child Support Guidelines." *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *see also Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996).

The order at issue was filed on December 14, 2004. Shortly thereafter, on January 18, 2005, the Child Support Guidelines were revised substantially. The version of the Guidelines in effect when the order was entered provided that the Guidelines were designed to apply to situations where the non-custodial parent exercised co-parenting time at least every other weekend from Friday to Sunday, two weeks during the summer, and an additional two weeks during holidays throughout the year. *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(6). The Guidelines also provided that if the non-custodial parent was not exercising the minimum amount of visitation, then an amount should be added to compensate the "obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) is/are not with the obligor." Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(b). Likewise, a court could consider a

downward deviation if the non-custodial parent was consistently providing more care and supervision than contemplated in the rule. *Id*.

The new Guidelines likewise presume that the non-custodial parent will exercise co-parenting time a minimum of every other weekend from Friday to Sunday, two weeks during the summer, and an additional two weeks during holidays throughout the year, "for a total of eighty (80) days per year." Tenn. Comp. R. & Regs. 1240–2-4-.03(6)(e)(1). The new Guidelines specifically set forth a chart for determining when and how much child support payments should be increased or decreased based on the non-custodial parent exercising more than or less than the average visitation contemplated by the rules. *See* Tenn. Comp. R. & Regs. 1240–2-4-.03(6)(e)(2) and (3). However, the new Guidelines also require there to be a "significant variance" before a party can have current child support obligations modified. As of January 1, 2006, a significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order and the amount of the proposed support order… ."[2] Tenn. Comp. R. & Regs. 1240-2-4-.05(7).

We agree with Father that the Trial Court erred when it set forth a specific dollar amount Father would be penalized if, in the future, he missed any of his co-parenting time. If Father does not exercise the amount of co-parenting time contemplated by the Guidelines, and the amount of Father's reduced co-parenting time is such that Mother is permitted under the Guidelines to seek a modification, she will be entitled at that time to seek such a modification. In the meantime, Father cannot be penalized in the manner set forth in the Trial Court's order as such a penalty is inconsistent with the Guidelines. We also note that given these parties' history of numerous post-divorce disputes, the procedure created by the Trial Court almost certainly would result in continuous disagreements between Mother and Father as to whether such a day or days of visitation had been missed by Father and, therefore, what additional amount Father owed. For example, what happens if Father misses a weekend visitation day but has the children for an unscheduled weekday visitation the next month? Compliance with the Guidelines will prevent giving Mother and Father the additional opportunity to disagree about how much Father's child support payment should be at any given time.

We hereby vacate the portion of the Trial Court's order which requires Father to pay an additional $50 each time he fails to exercise co-parenting time on a weekend, and an additional $25 for each day that he fails to exercise co-parenting time on a holiday or during the summer. In all other respects, the judgment of the Trial Court is affirmed.

---

[2] If the parent seeking a modification in a support order qualifies as a low income provider, then a significant variance is defined as seven and one-half percent (7.5%). Tenn. Comp. R. & Regs. 1240-2-4-.05(7).

## **Conclusion**

The judgment of the Trial Court is vacated in part, and is affirmed as so modified. This case is remanded to the Trial Court for collection of the costs below. Exercising our discretion, costs on appeal are taxed one-half to the Appellant Dwight Kelley Lindsay and his surety, and one-half to the Appellee Tammy Hopkins Lindsay.

_____
D. MICHAEL SWINEY, JUDGE