IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 11, 2015 Session

## MICHAEL TODD CULVER v. LISA CULVER

**Appeal from the Circuit Court for Hamilton County**
**No. 12D1015      Jacqueline S. Bolton, Judge**

_____

**No. E2014-01201-COA-R3-CV-FILED-JUNE 26, 2015**

_____

This appeal arises from a divorce. After 20 years of marriage, Michael Todd Culver ("Husband") sued Lisa Culver ("Wife") for divorce in the Circuit Court for Hamilton County ("the Trial Court"). After a trial, the Trial Court divided the marital estate and granted the parties a divorce. Wife appeals to this Court. We hold, *inter alia*, that the Trial Court did not commit reversible error in its valuation or division of the marital estate, or in declining to find Husband in contempt. We hold further that the Trial Court erred in adding $500 per month in alleged rental income to Wife's income for child support purposes. We, therefore, reverse that portion of the Trial Court's judgment and remand for a new calculation of child support. We affirm, in part, and, reverse, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed, in part, and, Reversed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Leslie B. McWilliams, Chattanooga, Tennessee, for the appellant, Lisa Culver.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Michael Todd Culver.

# OPINION

## Background

Husband and Wife were married in 1992. The parties have two minor children, K.C. and T.C. In May 2012, Husband filed for divorce against Wife. In September 2013, Wife filed a motion for contempt, alleging that Husband had failed to pay his court ordered portion of the children's private school tuition. This case was tried in December 2013.

Both parties are college-educated and in their mid-forties. Husband is a member of the National Guard, and also an information technologist at CSX Railroad. Wife is an auditor for the city of Chattanooga. Husband's monthly income was $6,204.00, and Wife's monthly income was $5,558.00. The parties agreed that they would each keep their own pensions from their respective employers. The parties stipulated that Wife should be the primary residential parent of their two daughters. Husband testified that Wife controlled the parties' finances during the marriage and made poor financial decisions. Wife, on the other hand, alleged that Husband dissipated marital assets. Indeed, Husband took a trip to Disney World with his female friend, her two children, and the parties' children.

In January 2014, the Trial Court entered a memorandum opinion. In March 2014, the Trial Court entered its final decree incorporating its January 2014 memorandum opinion. The Trial Court stated in its memorandum opinion, in part:

> The parties have dissipated much of their assets of the marriage. Though the parties have been attempting to sell the marital home, the only offer they received would result in a negative $4,000.00 deficiency on the mortgage. Each of the parties took half of the RV debt. The marital home is valued, according to the Court, at $185,000.00 with a $168,000.00 mortgage. Once the divorce was filed, the Wife's sister-in-law moved into the home. Husband alleges that part of the problem that the house has not sold is that because the sister-in-law moved in the house is piled with clutter, boxes and other unseemly items which negatively affect its saleability. The house has been on the market for at least 10 months. The house was purchased for $140,000.00 in 2006 and the parties made some $30,000.00 in improvement to the house. Wife thinks the house is worth $177,000.00; he says $190,000.00.

Husband alleges that because he was deployed overseas for much of their marriage, Wife had control of all the income in the home. Husband basically states that Wife was a spendthrift during the marriage.

There is no doubt that since returning to the states, Husband has dissipated some assets, including nearly $3,000.00 for pearls, a motorcycle, a Disney trip, which costs over $6,000.00. He took a loan against his 401k of some $13,500.00. He has also had to pay $8,200.00 +/- in attorneys fees so far. The Court specifically finds that though Husband made many withdrawals from joint funds, Wife was actually the "captain of the ship" during the time he was deployed as to the funds of both parties and she ran up substantial debts during this time.

Husband's income is $6,204.00 per month and Wife's is approximately the same at $5,558.00 per month. The Wife also receives $500.00 in rental income each month. Husband says the $13,500.00 he withdrew from the 401k did not all go to him but that over $8,000.00 of that he sent to Wife.

\*\*\*

From all of which the Court finds as follows: Value of the house is $185,000.00 according to the Court subtracting the mortgage of $167,000.00, the Court finds that there is an equity of $18,000.00. The Court finds that the Husband should be awarded $6,000.00 in equity and he will quitclaim the home to the Wife. The Court bases the equity determination upon Wife's spending while she was in charge of the parties' money while Husband was overseas, and Husband's dissipation of some of the assets of the marriage once he returned home.

The Trial Court awarded $53,947 in marital assets to Wife, and $53,216 to Husband. The Trial Court assigned $31,709 in marital liabilities to Wife, and $17,041 to Husband. Wife was designated primary residential parent of the parties' two children. In its final decree, the Trial Court stated as follows, in part:

4.   The Defendant is awarded the marital home subject to her payment of $6,000.00 to the Plaintiff for his share of the marital equity therein. Plaintiff will quitclaim the home to the Defendant upon receipt of his equity.
5.   The Plaintiff is awarded his Thrift Savings Plan, the CSX 401(k), Schwab IRA account ending in No. 5539, the 2007 Toyota Tundra,

the Victory Motorcycle, his furniture, including the master bedroom suite and desk from the marital home, and his tools, including the Malcita Kit.

6. The Defendant is awarded $5,000.00 from Plaintiff's CSX 401(k), $4,152.00 from Plaintiff's Schwab IRA account ending in No. 5539, $22,501.00 from Plaintiff's Schwab Contributory IRA account ending in No. 4572, Schwab account ending in No. 5867, the 2005 Saturn Vue, the 2002 Toyota Sequoia, yard tools and pressure washer.

7. The Plaintiff shall pay the USAA card no. 9754, the USAA credit card no. 1396, USAA Mastercard, the RV deficiency, and his personal loans.

8. The Defendant shall pay the Chase Disney Visa credit card no. 5573, the Discover card no. 0735, the Old Navy credit card no. 3938, and the RV deficiency.

9. The Court finds there are no sanctions or contempt on either party.

Wife filed a motion to alter or amend judgment which was denied. Wife filed a timely appeal to this Court.

## Discussion

Although not stated exactly as such, Wife raises four issues on appeal: 1) whether the Trial Court erred in valuing the former marital residence and the equity therein; 2) whether the Trial Court failed to equitably divide the parties' assets and liabilities; 3) whether the Trial Court erred in denying Wife's motion for contempt against Husband for his failing to comply with the Trial Court's order; and, 4) whether the Trial Court erred in adding $500 per month in alleged rental income to Wife's income for child support purposes. Husband raises the following additional issue on appeal: whether Husband is entitled to his reasonable attorney's fees in defending this appeal.

We first address whether the Trial Court erred in valuing the former marital residence and the equity therein. Wife asserts that the marital residence should be valued at $177,000. Husband asserted that the marital residence should be valued at $190,000. The Trial Court selected $185,000 as the value of the marital residence. Wife argues that because the house went unsold on an offer of $176,000, the Trial Court erred in arriving at the higher figure.

In *Neamtu v. Neamtu*, No. M2008-00160-COA-R3-CV, 2009 WL 152540 (Tenn. Ct. App. Jan. 21, 2009), *no appl. perm. appeal filed*, this Court discussed our standard of review with respect to issues surrounding the valuation of marital assets. We stated:

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at * 11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact, *Kinard*, 986 S.W.2d at 231; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith*, 93 S.W.3d at 875.

*Neamtu*, 2009 WL 152540, at *4.

The Trial Court chose a figure within the high and low bounds of evidence presented by the parties. We are disinclined to tweak a valuation absent some compelling contrary evidence in the record. While Wife's argument about the specific difficulties the parties have faced in selling the marital residence has a certain logic, it is, in our view, an insufficient basis to overturn the Trial Court's valuation, a valuation that fell within the range of evidence presented by the parties. As the evidence does not preponderate against the Trial Court's finding, the Trial Court did not commit reversible error in arriving at a value of $185,000 for the marital residence.

We next address whether the Trial Court failed to equitably divide the parties' assets and liabilities. Wife argues that the Trial Court failed to take into account Husband's dissipation of over $30,000 in assets. According to Wife, she should have received an additional $30,000 in assets to equalize the division. Regarding their debts, Wife argues that the Trial Court should have equally divided the $22,710 in joint debts owed by the parties before Husband left the marital residence, with each party then paying their respective debts incurred by them after the separation.

Tennessee law sets out a number of factors for trial courts to consider in making an equitable division of marital property, including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

-5-

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2014).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

Initially, we note that the Trial Court found that both parties dissipated marital assets, and the evidence does not preponderate against this finding. Wife argues that the Trial Court somehow did not take into account Husband's acts of dissipation when dividing the marital assets and liabilities. However, from the Trial Court's order quoted above, it is apparent that the Trial Court did, in fact, take the spending behavior of both parties into consideration. Neither party was innocent in terms of dissipating marital assets.

Another relevant factor as to this issue is that of the parties' pensions. Both parties agreed they would take their own pensions from their respective employers. It was agreed that Wife's pension would be around $500 per month greater than Husband's National Guard pension. Regarding other sources of retirement income, Husband will draw his CSX Railroad pension in lieu of Social Security. Wife acknowledged this fact in her testimony, stating: "Right. And I have Social Security, so we're even."

The parties are roughly equal in terms of the statutory factors. These are educated parties in their mid-forties with roughly equal incomes. The record reflects that Wife will draw a somewhat larger pension than Husband's National Guard pension upon their retirements. These facts all tend to support the Trial Court's division of the marital estate as being equitable. A trial court has broad discretion in dividing the net marital estate, and we are disinclined to second-guess the Trial Court. Taking all relevant factors into consideration, and aware of the Trial Court's discretion in such matters, we affirm the Trial Court in its division of the marital assets and liabilities.

We next address whether the Trial Court erred in denying Wife's motion for contempt against Husband for his failing to comply with the Trial Court's order. Wife asserts that only after she had filed a motion for contempt did Husband pay his part of their daughter's private school tuition as ordered. According to Wife, she should be awarded her attorney's fees for having to prompt Husband to act. Nevertheless, Wife acknowledges that these matters were resolved, stating in her brief:

> On September 12, 2013, after he still had not paid his portion [of tuition], Wife was forced to file a Motion for Contempt. His attorney told him to pay and then he paid. Wife is entitled to her attorney's fees for having to file the Motion to have Husband comply with the Court order to pay support owed for the children.

The Trial Court held in its final order that neither party was in contempt. "Determinations regarding contempt lie within the trial court's sound discretion and are final, absent any plain abuse of that discretion." *Hill v. Hill*, 152 S.W.3d 543, 548 (Tenn. Ct. App. 2004). The Trial Court decided not to punish Husband with contempt for his tardiness in paying his tuition obligation, and, in our view, this was an appropriate exercise of discretion by the Trial Court. We find no reversible error in the Trial Court's decision not to find Husband in contempt.

We next address whether the Trial Court erred in adding $500 per month in alleged rental income to Wife's income for child support purposes. Husband alleges that Wife receives rent from her sister, who lives with Wife. However, Wife testified unequivocally at trial that she receives no rent from her sister due to her sister's health problems. On appeal, Husband cites to no contrary proof in the record supporting the proposition that Wife receives $500 per month in rental income from her sister. Instead, Husband merely cites to the legal standard by which this Court extends strong deference to the credibility determinations of trial courts. As this Court explained in *Richardson v. Spanos*:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v.*

*Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

***

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

This Court does indeed extend strong deference to trial courts' credibility determinations, but here we are confronted with a specific finding of fact for which there is no evidence in the record which we can discern. That the Trial Court did not believe Wife when she denied receiving rent from her sister is not proof that Wife received $500 per month in rent from her sister. The mere allegation by Husband does not establish this as fact. Therefore, we reverse the Trial Court in its adding $500 per month in rental income to Wife's income for child support purposes. Our holding on this issue requires that this case be remanded to the Trial Court for a new calculation of child support, this

time excluding the $500 per month in alleged rental income from Wife's sister for which there simply is no competent evidence in the record.

The final issue we address is Husband's issue of whether he is entitled to his reasonable attorney's fees in defending this appeal. Husband's rationale on this issue is that since Wife appealed an almost equal division of assets and liabilities, Husband is entitled to reasonable attorney's fees in defending such an unjustified appeal. We find this argument unavailing, especially in light of the fact that Wife prevailed on one of her issues. We decline to award Husband his attorney's fees.

In summary, we reverse the Trial Court in its adding $500 in monthly rental income to Wife's income for child support purposes as the evidence does not support this finding. We remand this case to the Trial Court for a new child support calculation. We otherwise affirm the judgment of the Trial Court. We decline to award attorney's fees on appeal.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below, and for further proceedings consistent with this Opinion. The costs on appeal are assessed equally one-half against the Appellant, Lisa Culver, and her surety, if any; and, the Appellee, Michael Todd Culver.

_____
D. MICHAEL SWINEY, JUDGE