IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2004 Session

## STACEY G. HILL v. DONNA ELIZABETH FRAZIER HILL

**Appeal from the Circuit Court for Hamilton County**
**No. 99D2412      W. Neil Thomas, III, Judge**

**FILED MAY 4, 2004**

**No. E2003-02173-COA-R3-CV**

Donna Elizabeth Frazier Hill ("Mother") filed a complaint against Stacey G. Hill ("Father") seeking to modify the parties' Permanent Parenting Plan ("the parenting plan"). Father responded and filed a counterclaim. Mother proposed a revised plan that would reduce Father's visitation time and increase his child support obligation. The trial court denied Mother's revised plan with respect to the oldest child, but granted her proposed changes with respect to the other children. The trial court designated Father as the primary residential parent of the oldest child and increased his child support obligation for the younger children; however, the trial court refused to order Mother to pay child support for the oldest child on the ground that Father "has not required the [oldest] child to comply with the original Parenting Plan based on the child's expressed desires." Father appeals, arguing that the trial court erred in deviating from the Child Support Guidelines ("the Guidelines") based upon the ground espoused by the court. We vacate so much of the trial court's order as absolves Mother of any obligation to support the oldest child in the custody of Father.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated in Part and Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. (E.S.), and WILLIAM H. INMAN, SR.J., joined.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellant, Stacey G. Hill.

William H. Horton, Chattanooga, Tennessee, for the appellee, Donna Elizabeth Frazier Hill.

**OPINION**

I.

The parties were married on May 30, 1980. Three children were born to their union – Haley Brooke Hill ("Haley")[1] (DOB: September 27, 1988), Caden Brock Hill ("Caden") (DOB: December 31, 1991), and Whitney Leigh Hill ("Whitney") (DOB: December 31, 1991)[2]. On February 18, 2000, the trial court awarded Father an absolute divorce under Tenn. Code Ann. § 36-4-101(11)[3] based upon Mother's stipulation that she was guilty of inappropriate marital conduct. The court also adopted the parties' Marital Dissolution Agreement as well as the parenting plan, which plan designated Mother as the primary residential parent of the three children. Under the parenting plan, the children were to reside with each parent on an alternating week-to-week basis, and Father was ordered to pay child support to Mother in the amount of $682 per month.

On July 6, 2001, Mother filed a complaint to modify the parenting plan, alleging that "there is no consistency" as a result of Father's "constant rescheduling of his time with the children." Mother's proposal to the court would reduce Father's weekly visitation to every other weekend and increase his child support obligation to $1,483 per month. Haley, who was nearly 13 at the time, did not want Mother to request a modification of her visitation time with Father.[4] Apparently in response to Mother's filing of the complaint and other events, Haley subsequently expressed her desire to end all contact and visitation with her mother. Accordingly, in his counterclaim, Father requested, among other things, that the trial court (1) allow Haley to live with him "full-time" and (2) amend his child support obligation accordingly.

---

[1] We refer to the children by their first names as did the parties. No disrespect is intended by this approach.

[2] Caden and Whitney are twins.

[3] Tenn. Code Ann. § 36-4-101 (2001) provides, in pertinent part, that

> [t]he following are causes of divorce from the bonds of matrimony:
>
> * * *
>
> (11) The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper which may also be referred to in pleadings as inappropriate marital conduct; . . . .

[4] At a subsequent hearing, Haley testified before the court in chambers as follows:

> I was going on a mission trip, and before I went, my mom had told us before that she was going to file for custody of my brother and sister and I, where we would only see our dad ever other weekend. And I agreed. . . . Then I thought about it, and I told her, no, I don't want you to do that. She said, okay, I will not do it.
>
> So I leave for the mission trip, and I come back. And I had gone to my dad's after I got back, and when my mom picked me–or when I went to my dad's, he told me that she had filed for custody of me, and I was really upset.

-2-

On January 3, 2002, Mother filed a motion "for an order enforcing the results of mediation as to counseling for the parties and [Haley]" or to compel Father and Haley, among other things, to participate in family and/or individual counseling. Mother also asked the trial court to compel Father to make Haley available for visitation at least "every Wednesday and at such other times as [Mother] and the counselor . . . believe is reasonably necessary for the well being of [Haley]." On March 19, 2002, the trial court ordered Haley to participate in counseling with Ronald L. Wigley, Psy.D., and reserved the issue as to whether to request a report from him.

On April 3, 2003, Mother amended her complaint to modify, alleging that Father "violated the [the parenting plan] by encouraging and allowing the parties' child, Haley, to move in with him and to refuse to comply with the [p]arenting [p]lan." Some three months later, the trial court held a hearing and received testimony from a number of witnesses, including Father, Mother, and Dr. Wigley, the clinical psychologist who had counseled Haley. The trial court also heard Haley's testimony in his chambers.

After the hearing, the trial court issued an order, which contained the following findings:

> The Court finds that the daughter, Haley Hill, had moved in with her father in July 2001 and refused to return to her mother's home after [Mother] filed her original petition. Contact since that date has been minimal, at the insistence of Haley Hill. The Court finds that there is no rational explanation or understandable reason by the Court for Haley Hill's conduct.[5]
>
> It is further the finding of the Court that the parties initially attempted to mediate the matter unsuccessfully, and thereafter, upon the request of [Mother], the Court had an in-chambers session with Haley Hill and ordered the parties to counseling with Dr. Ron Wigley. It is the finding of the Court that Dr. Ron Wigley has expressed reservations about "forcing" Haley Hill, who is now age 14, to return to her Mother, pursuant to the original Permanent Parenting Plan.

In its order, the trial court designated Father as the primary residential parent of Haley and approved Mother's revised plan with respect to Caden and Whitney. The trial court's order also stated that

> it is the Court's determination and order that [Mother] should have visitation time with her daughter Haley Hill and Haley Hill is urged

---

[5]There is testimony in the record, which, if believed, would indicate that Mother is not entirely blameless in the breakdown of her relationship with Haley. However, we do not need to reach the trial court's factual finding that "there is no rational explanation or understandable reason . . . for Haley Hill's conduct." We say this because the trial court's finding is not challenged on appeal and, more importantly, because we have determined that the trial court erred as a matter of law in holding that Mother was not obligated to pay child support due to her daughter's refusal to visit with her.

to participate in such visitation on no less than an alternating weekend basis. The Court declines to make any further order with respect to visitation at this time as it relates to Haley Hill.

* * *

With respect to payment of child support by [Mother] to [Father] for Haley Brooke Hill, the Court finds that since [Father] has not required the child to comply with the original Parenting Plan based on the child's expressed desires as to contact with [Mother], no support should be paid by [Mother] to [Father] for Haley Hill.

(Paragraph letter designations omitted).

## II.

Father raises the following issue for our review:

Whether the trial court erred in failing to award child support to [Father] based upon a finding that [Haley's] refusal to visit with [Mother] was reason to deviate from the Child Support Guidelines?

In this non-jury case, our review is *de novo* upon the record of the proceedings below, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

## III.

Under Tenn. Code Ann. § 36-5-101(e)(1)(A) (2003), when determining the appropriate level of child support,

the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

When the trial court decides to deviate from the Guidelines,

> primary consideration must be given to the best interest of the child(ren) for whom support under these guidelines are being utilized in the case before the court. Written reasons justifying deviation must be included in the order allowing the deviation, together with a statement of what the support would have been under the guidelines without the deviation.

Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(5). According to the Guidelines, deviation is appropriate in the following specified cases:

> (2) Deviation from the guidelines may be appropriate in other cases when the court finds it is in the best interest of the child(ren) including, but not limited to, the following:
>
> (a) In cases where the Department of Children's Services has taken custody of the child(ren) [pursuant to a neglect, dependency, or abuse action] . . . ; and/or
>
> (b) In cases where physical custody of the child(ren) is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation as defined in [Tenn. Comp. R. & Regs. ch.] 1240-2-4-.02(6).
>
> *  *  *
>
> (4) In instances of extreme economic hardship, such as in cases involving extraordinary medical needs not covered by insurance or other extraordinary special needs for the child(ren) of the obligor's current family, [child(ren) living in the home with the obligor for whom the obligor is legally responsible] deviation from the guidelines may be considered in order to achieve equity between the parties when the court so finds.

Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2), (4).

In *Jones v. Jones*, 930 S.W.2d 541 (Tenn. 1996), the Supreme Court addressed the issue of downward deviation pursuant to the framework of Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2) and (4). *Id.* at 543-46. The Court in *Jones* recognized that Tenn. Code Ann. § 36-5-101(e)(1) authorizes downward deviation from the Guidelines "in order to ensure equity between the parties"; however, the Court cautioned that the authority of a trial court "to do so must be considered in light of the provisions dealing with such deviation" found in Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2) and

(4). *Id.* at 545. The Court explained that the Guidelines "expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the [G]uidelines; and where the obligor is saddled with an 'extreme economic hardship.'" *Id.* "Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed," the Court explained that "these specific instances nevertheless are a powerful indication as to the *types* of situations in which it is contemplated under the [G]uidelines." *Id.* (emphasis in original).

IV.

A.

Father argues that the trial court erred in refusing to order Mother to pay child support. He contends that Haley's refusal to visit with her mother is insufficient, as a matter of law, to justify the trial court's refusal. Father argues that the trial court "may have believed that [it] was holding [Father] responsible for Haley's refusal to spend time with" Mother. However, Father argues that such an approach "actually harms" Haley because she "is being deprived of a right and benefit to which she is entitled."

Mother argues that the trial court was justified in deviating from the Guidelines. Mother contends that it would be "unjust or inappropriate" to order her to pay child support because Father "intentionally interfered with the parenting plan" and "encouraged" Haley to end contact or visitation with her. Mother continues to argue that she should be relieved of her child support obligation because

> [a] parent should not be permitted to substantially damage a child's relationship with the other parent, obtain parental responsibility for the child as a result of the damaged relationship, and then receive full child support from the noncustodial parent when the child with a parent's encouragement treats the noncustodial parent as nonexistent. Such a precedent would only encourage parents to use their children more than what already occurs in divorce and post-divorce proceedings.

B.

The Supreme Court in *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991), emphasized that the purpose of child support payments "is to fulfill the non-custodial parent's obligation to contribute to the *child's* support." *Id.* at 607 (citing *Hester v. Hester,* 59 Tenn. App. 613, 620, 443 S.W.2d 28, 31 (1968)) (emphasis in original). As a result, "the custodial parent's conduct cannot extinguish the non-custodial parent's legal responsibility." *Id.* The court in *Rutledge* also recognized that a parent's obligation to pay child support and the right to visitation "are not interdependent" and are "*both* intended for the benefit of the child." *Id.* at 607 (emphasis in original).

While ***Rutledge*** did not discuss the impact, if any, of the then-recently adopted Guidelines upon the principle addressed in that case, we find nothing in the Guidelines, the relevant statutes, or caselaw, indicating the General Assembly intended a different result post-Guidelines. We continue to believe that the obligation of the obligor spouse to pay child support and that spouse's right to visitation with a minor child "are not interdependent." ***Id***. at 607. A court has a multitude of remedies by which it can enforce both; but, generally speaking, a court is without authority to withhold one in order to enforce the other.

The Guidelines, as interpreted in ***Jones***, clearly allow, in an appropriate case, for a downward deviation in child support. For example, a court is justified in deviating downward when the obligor spouse has more than the amount of visitation contemplated by Tenn. Comp. R. & Regs. ch. 1240-2-4-.02(6), *see* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2)(b); or where the Department of Children's Services has taken custody of children, *see* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(2)(a). "Instances of extreme economic hardship," as defined in the Guidelines, can also be the basis for a downward deviation. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(4). ***Jones*** makes it clear that these are not the only reasons that would justify a downward deviation. *See* ***Jones***, 930 S.W.2d at 545. However, that case also makes it clear that "these specific instances nevertheless are a powerful indication as to the *types* of situations in which it is contemplated under the [G]uidelines." ***Id***. (emphasis in original). We do not believe the trial court's rationale for denying Father's request for child support – Haley's refusal to visit with her mother – is so similar to the "specific instances" expressly stated in the Guidelines as to be considered of the same type. Furthermore, we hold that the withholding of support in this case is not in the best interest of Haley. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(5). The Guidelines contemplate that children will enjoy the fruits of the obligor spouse's labor.

Accordingly, we hold that the trial court erred as a matter of law when it refused to order Mother to pay child support with respect to Haley. This case is remanded to the trial court for the setting of child support in accordance with the Guidelines.

C.

Mother raises the following issue on appeal:

> Whether the Trial Court erred in failing to find [Father] in contempt
> for his refusal to comply with the parenting plan.

Determinations regarding contempt lie within the trial court's sound discretion and are final, absent any plain abuse of that discretion. ***Hawk v. Hawk***, 855 S.W.2d 573, 583 (Tenn. 1993); ***Sherrod v. Wix***, 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). We find no abuse of discretion in the trial court's refusal to find Father in contempt. The trial court found that Haley moved in with Father "and refused to return to her mother's home" in July, 2001, the same month that Mother filed a complaint to modify the parenting plan. The trial court also found that "Dr. Ron Wigley has expressed reservations about 'forcing' Haley Hill, who is now age 14, to return to her Mother,

-7-

pursuant to the original Permanent Parenting Plan." Having found no abuse of discretion in this part of the trial court's decision, we affirm the trial court on this issue.

V.

So much of the judgment of the trial court as directs that Donna Elizabeth Frazier Hill is not obligated to pay child support to Stacey G. Hill is hereby vacated. In all other respects, the trial court's judgment is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, Donna Elizabeth Frazier Hill.

_____
CHARLES D. SUSANO, JR., JUDGE