IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 9, 2006 Session

## JOHN L. MEDEARIS v. BONNIE BAUMGARDNER (STOLOFF)

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 66485      Hon. W. Frank Brown, III., Chancellor**

**No. E2005-01785-COA-R3-CV  - FILED MARCH 27, 2006**

The mother sued to enforce Agreement with the father to pay college expenses for adult child of the parties.  The Trial Court refused to enforce the terms of the Agreement on the equitable grounds of unclean hands and the lack of cooperation and fair dealings by the mother.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, joined.

Pamela R. O'Dwyer, and Randall D. Laramore, Chattanooga, Tennessee, for appellant.

Donna L. Pierce, Chattanooga, Tennessee, for appellee.

**OPINION**

        The parties, father John and mother Bonnie, were divorced on March 7, 1988, and the Final Judgment adopted and incorporated their Marital Dissolution Agreement by reference. The MDA stated that the mother was to have custody of the parties' minor child, James Henry Medearis (Jimmy), d.o.b. 3/24/86, and the father was required to pay semi-monthly child support payments of $260.00.  The MDA also provides:

        Husband's liability for such child support payment shall cease upon the happening of whichever of the following events shall first occur:

        a.        Death of Husband;

b. Death or marriage of child; or

c. Child obtains the age of 18 years; provided however, Husband agrees to continue child support payments to Wife until the child obtains 22 years of age so long as the child continues to live with Wife on a daily basis and is enrolled as a full-time student in pursuit of a recognized license, diploma or degree. So long as Husband is paying at least fifty percent of the child's annual tuition, books, room and board, Husband will have no obligation to directly pay Wife any child support.

In 2000, the father filed a Petition for Contempt and to Modify the Final Decree. The Petition alleged that the mother had interfered with the father's visitation rights, and allowed Jimmy to disregard the visitation schedule. The father sought injunctive relief and mediation, asking the Court to order the mother to cooperate with the visitation schedule. The mother responded with a counter-claim for increased child support.

The Court conducted a hearing on June 26, 2000, including an interview with Jimmy in chambers, in the presence of the attorneys. In that interview, Jimmy opined he did not have a good relationship with his father, that he and his father did not communicate because the father would not listen, and that he would be ok with the Court telling the father to leave him alone. Further, that his father had "taken him to court" which made him angry, and basically expressed his desire to have nothing to do with his father.

The Court entered an Order on July 24, 2000, and found that to enforce the visitation at that point would be "disastrous" and would further impair the father/son relationship. The Court found that counseling was necessary, and ordered that all parties should attend counseling, and that the visitation schedule would be suspended pending further orders of the court. Both parties were ordered to attend parenting classes, and the father's Motion for Injunctive Relief was denied.

On January 2, 2002, the Court entered an Order stating that both parties had filed certificates showing their attendance at a parenting class, and also stating that the father had voluntarily increased his child support payments. The Court stated "It appears that this case, in part due to the child's age and feelings, must be resolved by the parties and not by judicial fiat." The Court then dismissed both parties' petitions without prejudice, and ordered the parties to continue to work with each other and their son to improve the father-son relationship.

On August 18, 2004, the mother filed a Motion seeking to enforce the MDA provisions as related to child support and college expenses. In the father's Response, he stated that he had ceased paying child support payments in May 2004 when the child graduated from high school, having turned 18 in March of 2004. He asserted that he had no information that the child was attending college, and the mother continued to interfere with his relationship with Jimmy, and that he had not seen Jimmy since the last court hearing. Further, that the mother's interference justified relieving his future duty of support under the MDA.

The Court conducted a trial on June 6, 2005, wherein the parties and Jimmy testified.

Following trial, the court issued a Memorandum Opinion and Order, wherein the Court stated that "the law is clear that parties' agreements applicable to children's post-emancipation support and education are treated and handled pursuant to contract law and not divorce law." The Court denied the mother's request for contempt and stated that the case was "one of the saddest and most tragic cases faced by this court". The Court credited the father's testimony that the mother told him during the divorce that he would not have to pay support if he would agree not to see the child. The Court stated the father testified his relationship with Jimmy began to deteriorate soon thereafter, and Jimmy would not visit. The mother stated that she let Jimmy decide whether to visit. The Court found that the father went to a counselor, but the mother did not and the father sent gifts, cards, money and letters to Jimmy to try to keep the relationship alive, but Jimmy would then leave messages telling the father he wanted no contact. The Court found that the father had not seen Jimmy since their last hearing in 2000, and Jimmy blamed everything on the father and accepted no responsibility.

The Court found that with regard to child support that Jimmy wanted nothing to do with his father, but still wanted his money. The Court discussed the case law in Tennessee where a parent's influence over the child's relationship with the other parent was a factor in change of custody, and recognized the policy that a child's relationship with a non-custodial parent was very important. The Court found that it was clear that the mother had no use for the father and didn't want him around or involved, and wanted to be free of him. The Court found that Jimmy grew up in this environment and it affected how he felt about his father.

The Court then noted that in Tennessee, every contract had an implied standard of good faith and fair dealing, and that the MDA in this case provided for visitation, and the 2000 Order provided that the parties would attend counseling, but the mother had failed to comply with both. The Court found that a person who materially violates a contract could not then claim breach by the other party. The Court held the mother had breached the implied duty of good faith and fair dealing, and had also violated her duty to foster the other parent's relationship with the child, and the father was thus relieved of any further duty of support under the MDA. The Court also held that the mother was guilty of unclean hands for failing to abide by the Court's orders.

The mother has appealed and raised these issues:

1.    Did the Trial Court err in holding that there was a failure of consideration in the Marital Dissolution Agreement?

2.    Did the Trial Court err in holding that the mother violated the duty of good faith and fair dealing when she took no action to impede visitation or impair the son's relationship with father?

3.    Did the father waive his right to visitation and a relationship with the son when he took no action to secure visitation and failed to void the agreement after the court suspended visitation.

Our review of the Trial Court's decision as to factual determination is *de novo* with a presumption of correctness of the findings of fact by the Trial Court unless the evidence preponderates otherwise. But our review of the Judge's conclusions of law enjoy no such presumption. Tenn. R. App. P. 13(d).

The mother argues the Trial Court incorrectly held that there was a failure of consideration to support the father's post-emancipation support obligations under the MDA. The Trial Court did mention a "failure of consideration", but went on to explain that the main basis for its holding was the mother's violations of her duties under the contract, and that her breach relieved the father of his further obligations.

Both parties agree that a parent's obligation to pay support post-majority is purely a matter of contract in Tennessee, and is outside the parent's duty of legal support during minority. *See Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975). An agreement to pay support post-majority will be enforced as any other written contract. *See Hathaway v. Hathaway*, 98 S.W.3d 675 (Tenn. Ct. App. 2002). The parties also agree that the Chancellor was correct in holding that all contracts carry with them a duty of good faith and fair dealing. *Elliott v. Elliott*, 149 S.W.3d 77 (Tenn. Ct. App. 2004).

In ascertaining and giving effect to the parties' intentions regarding the MDA, it is clear that the Contract provided that the father would have liberal visitation with Jimmy, as set forth in the visitation schedule, and that there would be a continuing and viable father/son relationship, as the Trial Court found. The Trial Court, however, concluded that this relationship had deteriorated, and that both son and mother were responsible. The evidence does not preponderate against this factual determination. Tenn. R. App. P. 13(d). The evidence establishes the mother did not pressure the child to go to visit the father, but instead, let a minor make those decisions. In the ensuing years, the mother did not tell, ask, or encourage the child to visit or contact the father at all, and she did not attend the counseling mandated by the Court after the 2000 hearing, and did not, as custodial parent, ensure that Jimmy went to such counseling. The result was a complete breakdown in the father/son relationship, and the Court properly concluded the father had not received all the benefits that he was entitled to under the MDA, and further the mother had violated the implied duty of good faith and fair dealing because she had impaired the father's rights under the Contract.

The mother argues this finding is improper because visitation remained within the Court's control during the child's minority, and the Court could have ordered that it take place. The Court's determination was not dependent simply on the failure of visitation, however, but was based upon the mother's complete disregard for the father/son relationship and the Court's orders. Clearly, a failure to visit cannot relieve a party of his/her legal duty to support a child during his minority. *See Hill v. Hill*, 152 S.W.3d 543 (Tenn. Ct. App. 2004). The posture of this case, however, does not deal with the legal duty of support during the child's minority, rather with a contractual duty to support an adult child who is in college.

-4-

As stated, the Contract must be interpreted and enforced as any other contract, and is subject to the same defenses as any other contract.

The Court found the mother failed to comply with the Court's prior order regarding counseling and working together to repair the relationship, which further evidenced her lack of good faith and fair dealing, as well as subjecting her claim to the additional defense of unclean hands. This latter doctrine has been utilized to "deny relief if the granting of the relief asked will, because of the complained of activities of the litigant, produce an illegal or unjust result." *C.J.S. Equity*, §111. In this case, the Court invoked the doctrine of unclean hands due to the mother's conduct regarding the child's relationship with the father, and her disregard of the Court's prior order regarding counseling.[1] The evidence does not preponderate against this finding. Tenn. R. App. P. 13(d). It would be unjust to allow the mother to gain her requested relief from the Court when she disregarded the Court's prior order.

While Jimmy is not a party to this action nor to the contract, he did nothing to mend the relationship with his father, stating that he wanted nothing to do with him. His conduct as a third-party beneficiary of this Contract can be taken into account in determining whether the father's obligation to continue to support him post-majority should be enforced. *See Lopez v. Taylor*, 2005 WL 3555700 (Tenn. Ct. App. Jan. 4, 2005)("A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement"). Further, as the Trial Court explained, other jurisdictions that recognize a legal duty of a parent to support an adult child in college have held that the parent is excused from that duty when the child has repudiated his or her relationship with that parent. *See McKay v. McKay*, 644 N.E.2d 164 (Ind. Ct. App. 1994); *Hambrick v. Prestwood*, 382 So. 2d 474 (Miss. 1980); and *Milne v. Milne*, 383 Pa.Super, 177, 556 A.2d 854 (1989). .

Next, the mother argues the evidence did not support the Trial Court's factual determination that the mother impeded the father's relationship with Jimmy. As we noted, these findings are reviewed *de novo* with a presumption of correctness. The Trial Court's findings of fact hinged on witness credibility issues, and the evidence does not preponderate against the Trial Court's findings.

Finally, the mother argues that the father is estopped or has waived his right to a relationship with the son, by failing to exercise his option to void the parties' agreement as provided by a provision in the MDA, and by failing to return to court to enforce visitation. The mother's argument regarding voiding the agreement was not raised before the Trial Court, and will not be addressed for the first time on appeal. As to the father's failure to return to court, the father

---

[1]The mother argues in her brief that counseling was not mandated by the Trial Court after the 2000 hearing, but the Order demonstrates that it was.

explained that he felt this would be a dangerous move, given Jimmy's anger over the 2000 hearing. He explained that he was simply following the counselor's advice, and sent letters, cards, gifts, and called in an effort to continue the relationship, all to no avail. Both the counselor and the Trial Court had opined that forcing Jimmy to go on visitation would be the wrong thing to do, and the father thought he was in a classic Catch 22 situation.

"Waiver is defined as a voluntary or intentional relinquishment of a right." *American Home Assurance Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672, 678 (Tenn.1991). In this situation, the father did not voluntarily or intentionally relinquish his right to a relationship with his son. Likewise, estoppel requires a "promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn.1982). Further, the promisee must have reasonably relied on the promise. *Id.* There was no such promise nor reliance shown here.

Since we are affirming the Trial Court's Judgment it is unnecessary to address the issue raised by the father.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Bonnie Baumgardner (Stoloff).

———

_____
HERSCHEL PICKENS FRANKS, P.J.