IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2018 Session

## JENNIFER LEE MILLER v. DAVID MARK MILLER, II

**Appeal from the Chancery Court for Williamson County**
**No. 29478      Joseph Woodruff, Chancellor**

_____

### No. M2017-01867-COA-R3-CV

_____

This appeal involves a parent's obligation to pay college expenses for her son. After the parties' divorce proceeding, various orders and parenting plans were entered reflecting the parties' agreement to share equally their children's college expenses at the University of Tennessee. The trial court found that the parties subsequently reached an agreement that resulted in the oldest child deferring his enrollment for one semester, but that the agreement did not terminate or excuse the parties' existing obligation to share college expenses upon enrollment. The trial court found the mother in civil contempt for refusing to pay the college expenses and awarded a monetary judgment to the father for the unpaid expenses. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

John Samuel Cross, Franklin, Tennessee, for the appellant, Jennifer Lee Miller.

Adrian H. Altshuler and Caroline Beth Altshuler, Franklin, Tennessee, for the appellee, David Mark Miller, II.

### OPINION

#### I. FACTS & PROCEDURAL HISTORY

Jennifer Miller ("Mother") and David Miller ("Father") were divorced by decree of the Williamson County Chancery Court on June 9, 2003. At that time, the parties had two children – a four year old son and a three year old daughter. The parties entered into a marital dissolution agreement and permanent parenting plan granting Mother primary

custody. The parenting plan provided the following regarding the children's college education:

> College education; minimum room, board and tuition for in state University of Tennessee student shared on 1/2 basis so long as full-time student status and for no more than five (5) consecutive years.

An amended parenting plan was entered in 2004 with a similar provision:

> College: The parties agree to share equally the minimum room, board and tuition for in-state, University of Tennessee student expenses so long a[s] the child is a full-time student and for no more than five (5) consecutive years.

Finally, in 2010, the parenting plan was amended again due to Father's relocation to California. The children continued to live primarily with Mother in Tennessee. The parties again agreed to a substantially similar provision regarding college expenses:

> The parties agree to share equally the minimum room, board and tuition for in-state, University of Tennessee student expenses so long as the child is a full-time student and for no more than five (5) consecutive years.

The parties' son ("Son") graduated from high school in 2016.

On January 24, 2017, Father filed a petition for civil contempt alleging that Mother willfully refused to pay her share of the expenses for Son's college education in direct violation of the orders of the chancery court. Father asked the court to compel Mother to contribute her equal share of the minimum in-state tuition, room, and board for Son, who was attending the University of Tennessee at Knoxville. Mother filed an answer and motion to dismiss asserting lack of standing and claimed that she was excused from performance. The trial court held a hearing on the petition on June 9, 2017. Father and Mother were the only witnesses who testified at the hearing.

Mother took the position that she was no longer obligated to pay for any college expenses for Son, in spite of the court orders and parenting plans, because the parties had subsequently reached another agreement via text message. Mother claimed that a

condition of the text message agreement was not satisfied, and therefore, her entire obligation to pay college expenses terminated. Mother introduced as an exhibit the following text message exchange between her and Father:

(05/29/2016  14:29)

He's on plane. So are we in agreement that no drugs and good grades are how we're going to pay for college and help him a little bit we have to be in agreement on that and he has to come clean with a drug test in August because we're already going to be paying this summer for everything and then if he can't be clean and I guess that's a no-go I would think

David Miller (05/29/2016 14:32)

I think that's fair

(05/29/2016 14:33)

Have that discussion with him then and make a grown-up what are you have to put it in writing and have him sign it or whatever he doesn't want to talk and he's very guarded with me like I'm just an annoyance and he doesn't want me to even talk

David Miller (05/29/2016 14:36)

Did u already tell him and I reinforce it or is this new to him?

Approximately two weeks later, a second exchange occurred:

(06/10/2016 22:50)

So are u on board with the drug test and no support for college? Or r u backing down again?

David Miller (06/10/2016 22:50)

in a movie. I'll try to reply after

David Miller (06/10/2016 22:50)

Again? I didn't back down. And yes I told him I agreed with that plan

3

David Miller (06/10/2016 22:53)

Omg. I just told him that u are on board and serious about the drug test and u are concerned he has addictions and I agree with the tests


The parties also testified about their agreement. Father testified that Son was enrolled and planning to attend college at the University of Tennessee at Knoxville during the fall of 2016 after he graduated from high school, but he "had a lot of issues with his mom" and she basically kicked him out of her house toward the end of the summer. Father admitted that he and Mother agreed for Son to take a drug test before he started school in August and that if he did not pass he would not receive funding from them for college. According to Father, Son took a test in August and passed, so Father was agreeable to Son starting school as planned. However, according to Father, Mother still refused to pay for her share of the expenses because she claimed that Son was not being respectful. According to Father, Mother told Son that he had to "defer his enrollment" at UT Knoxville for one semester. Father testified that because of the late date, he was unable to come up with enough money to pay for Son to attend school without assistance from Mother, so Son deferred his enrollment with the university and made plans to attend the following semester. Son lived with Father in California for a short time and returned to Tennessee to attend UT Knoxville for the spring semester of 2017. Father testified that Mother refused to contribute to the college expenses for the spring semester, so Father paid a portion of the expenses and Son obtained loans to cover the remainder. In sum, according to Father, he and Mother only agreed that Son going to UT Knoxville *beginning in August 2016 for the fall semester* was conditioned on him passing a drug test.


Mother also testified that she and Father agreed that Son "would pass a drug test before he went" to school. More specifically, according to Mother, the parties agreed that they would not pay for school starting in the fall if Son did not pass a drug test by August before school started. Mother claimed that she fully intended for Son to attend if he had a clean drug test. However, according to Mother, after she and Son returned from orientation at UT Knoxville, Son informed her that there was no need for him to take a drug test because he would not pass. (Thus, Mother testified that Son never took a drug test in August, as described by Father during his testimony.) Mother testified that "at that point we said okay, we are not paying for college, it is too much of a risk." When Mother was questioned about who asked Son "to defer the fall semester," she replied, "We both did and we both talked to him[.]" Mother testified that when Son returned from California to visit around Christmas, he informed her that he intended to attend UT Knoxville in January. At the time of trial, Mother still resided in Franklin, Tennessee,

4

and earned a salary of $90,000 per year. However, she did not believe she was obligated to pay for Son's college expenses.

The trial court entered a written order on July 7, 2017. The trial court found that Mother's obligation to provide college expenses for Son, as recited in the most recent court order, was lawful, enforceable, clear, and unambiguous. The court found that Mother was excused from paying such expenses *for the fall semester of 2016*. The court found that Mother and Father "agreed that before they would incur tuition expenses for [Son] to enroll and attend UT in the fall of 2016 he had to pass a drug test," but he did not, so the parties did not incur any expenses for that semester. However, the court found that Mother's refusal to pay such expenses for the spring semester of 2017 was willful and intentional, was not justified, and was in civil contempt of the 2010 order. The court awarded Father a judgment against Mother for $4,943.61, reflecting the amount that Father calculated was owed by each parent for the semester. Mother timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Mother presents the following issues, as we perceive them, for review on appeal:

1. Whether Father had standing and was the appropriate party to obtain a money judgment against Mother.

2. Whether the trial court erred in finding that Mother violated a clear and unambiguous court order;

3. Whether the trial court erred in finding that Mother was responsible for expenses equivalent to the minimum tuition, room, and board for a student at the University of Tennessee at Knoxville;

4. Whether the trial court erred in finding that the parties' subsequent agreement excused Mother from paying Son's college expenses only for the fall semester of 2016; and

5. Whether the trial court should have held that "repudiation of relationship" was a legal basis for excusing Mother from her obligation to pay Son's college expenses.

5

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

This Court reviews a trial court's factual findings *de novo* presuming those findings are correct unless the preponderance of the evidence is otherwise. *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). We review a trial court's legal conclusions without a presumption of correctness. *Id.*

## IV. DISCUSSION

We begin with a review of *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975), wherein the Tennessee Supreme Court examined a parent's obligation to pay educational expenses for a child beyond the age of majority. Historically, in Tennessee, "the law had imposed a duty on a parent to support" a child until age 21. *Id.* at 224. A change in the law occurred in May 1971, "when the *legal* duty of support was terminated at age 18 by the Legislature." *Id.* (emphasis added). In *Penland*, the parties had entered into a property settlement agreement in connection with their divorce in 1969, wherein the husband assumed liability for the educational expenses of the parties' children beyond high school. *Id.* at 223. After the law changed, the father claimed that he was no longer obligated to pay such expenses. *Id.* The Tennessee Supreme Court was tasked with deciding whether the divorce decree imposed a legal duty or a contractual duty for payment of the educational expenses. *Id.* at 224. Ultimately, the Court found that the property settlement agreement was "a contractual agreement between the [parties], independent of the legal duty of child support." *Id.* The Court acknowledged that other jurisdictions were split as to whether a parent was legally liable for college education but emphasized that the case before it was not about a parent's legal obligation. *Id.* The Court found this to be "a valid contractual area for husband and wife in the throes of divorce." *Id.* In sum, then, the Court held that the agreement in the parties' property settlement agreement was "a contractual obligation outside the scope of the legal duty of support during minority, and retained its contractual nature although incorporated in the final decree of divorce."[1] *Id.* at 224-25. The Court recognized that either Mrs. Penland

---

[1]The fact that certain provisions of a marital dissolution agreement retain their contractual nature does not mean that such provisions can only be enforced by suing for breach of contract rather than in an action for contempt. *Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *5 (Tenn. Ct. App. Sept. 7, 2016)(*no perm. app. filed*). The contractual nature of such a provision "does not negate the court's power to enforce it by contempt." *Id.*

6

or the parties' children were "entitled to enforce said obligation by the obtaining of a money judgment, from time to time, as the obligation matures[.]" *Id.* at 225.

## A.  *Standing*

Mother argues on appeal that Father "is not an aggrieved party having standing to seek a monetary judgment" in this case.  Father testified at trial that he paid a portion of Son's tuition and that Son obtained student loans for the remainder.  Father introduced as exhibits Son's student loan documentation, records from the university reflecting Son's expenses and payments, and Father's own summary of the total charges for the semester and the amounts he already paid.  Still, Mother argues that Father lacks standing to maintain this lawsuit because he did not pay the remaining balance for the tuition that she refused to pay and Son obtained student loans for it instead.  We are not persuaded.  The Tennessee Supreme Court recognized in *Penland* that the matter of post-majority educational expenses for one's children is "a valid contractual area for husband and wife in the throes of divorce." *Id.* at 224.  It also recognized that *either* Mrs. Penland *or* the parties' children were "entitled to enforce said obligation by the obtaining of a money judgment, from time to time, as the obligation matures." *Id.*  As a party to the contractual agreement and agreed order, we conclude that Father likewise has standing to enforce the obligation in this proceeding and may obtain a monetary judgment for the amount owed by Mother.  *See Moscheo v. Moscheo*, 838 S.W.2d 226, 227 (Tenn. Ct. App. 1992) (concluding that a mother had standing to enforce a provision of a divorce decree requiring the father to pay college tuition for his daughter).

## B.  *The Existence of a Clear and Unambiguous Court Order*

> Civil contempt claims based on alleged disobedience of a court order have four essential elements.  First, the order alleged to have been violated must be "lawful."  Second, the order alleged to have been violated must be clear, specific, and unambiguous.  Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order.  Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008)(footnotes omitted).  On appeal, Mother contends that the trial court erred by finding that she violated a clear and unambiguous court order as necessary to support a finding of contempt.  The trial court found that Mother's obligation to pay college

expenses, as recited in the court's most recent order from 2010, was clear and unambiguous. We agree.

When the parenting plan was amended for the last time in 2010, an agreed order was entered stating:

> The parties agree to share equally the minimum room, board and tuition for in-state, University of Tennessee student expenses so long as the child is a full-time student and for no more than five (5) consecutive years.

Mother suggests that *the parties' text messages* thereafter were ambiguous. However, Mother is not charged with contempt for violating the parties' text messages. The only *order* alleged to have been violated is the 2010 order requiring her to pay for her children's college expenses. We agree with the trial court's conclusion that the 2010 order is clear and unambiguous.

During closing arguments in the trial court, counsel for Mother suggested that the 2010 order was ambiguous because it only referenced "the minimum room, board and tuition for in-state, *University of Tennessee* student expenses." (Emphasis added.) Even though Son was attending the University of Tennessee at Knoxville, counsel for Mother argued that the order could reasonably be interpreted to mean the student expenses at any University of Tennessee campus, such as the University of Tennessee at Martin or the University of Tennessee at Chattanooga. However, neither parent testified that this was his or her understanding of the 2010 order. Notably, Mother does not suggest that she refused to pay her share of the college expenses because she believed that the 2010 order referred to the costs at another school or campus. Instead, Mother argues that the alleged ambiguity regarding the University of Tennessee should impact the amount she is required to pay for college expenses. Mother argues on appeal that the "proper analysis would require taking the minimum rate from [the] three campuses," because, we are told, the tuition rates vary among the campuses and the University of Tennessee at Knoxville is the most expensive. However, Mother did not present any evidence to the trial court to suggest that a different tuition rate would apply at a different campus and be less than what Son incurred at the University of Tennessee at Knoxville. The issue was only minimally addressed during closing argument, with no testimony or exhibits relevant to this issue. We cannot simply take judicial notice of tuition rates, nor can we find that the trial court erred by not "taking the minimum rate from [the] three campuses" when Mother failed to present *any* evidence to support this argument.

8

But, in any event, we conclude that Mother's proposed interpretation of the 2010 order is not reasonable. Again, the order provided,

> The parties agree to share equally the minimum room, board and tuition for in-state, University of Tennessee student expenses so long as the child is a full-time student and for no more than five (5) consecutive years.

Son enrolled at the University of Tennessee and incurred room, board, and in-state tuition student expenses. Under the circumstances, it is not reasonable to believe that the parties intended for the parents to measure their shared payment obligation by the expenses of some other campus where the child was not attending. The order was sufficiently clear to "enable reasonable persons to know exactly what actions [were] required." *Konvalinka*, 249 S.W.3d at 355.

## C. *The Text Messages*

Next, Mother argues that the trial court erred in concluding that the parties' text messages only excused her from paying for college for the fall semester of 2016. Mother argues that Son's failure to pass a drug test in August 2016 terminated her obligation to pay for college forevermore. Mother relies solely on the language of the parties' text messages to support her theory. Treating the text messages as a written contract, Mother claims that the trial court should not have considered testimony about the parties' intentions surrounding the text messages and the fall semester.

### 1. Parol Evidence

"The parol evidence rule protects a completely integrated written contract from being varied or contradicted by extraneous evidence[.]" *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 612 (Tenn. Ct. App. 1990). At the hearing, both Mother and Father testified as to their intentions and understanding of the parties' agreement during the summer before Son began college. Neither party suggested that their agreement was solely limited to the terms set forth in the two brief text message exchanges, from May and June, submitted as an exhibit at trial. Mother's counsel told the trial judge during opening statements that the parties' agreement was "memorialized" through the text messages. Mother testified that "[t]his all started back in May" when she found text messages on Son's phone suggesting drug use. Mother said she and Father "discussed that [Son] needed to stop or we would not be paying for school." Mother testified that after Son returned from orientation in July and told her that he could not pass a drug test,

9

"*at that point* we said okay, we are not paying for college." (Emphasis added.) She added, "So we decided at that time we were not going to waste the money." Mother also testified that she and Father came to an agreement and both asked Son "to defer the fall semester." During Father's testimony, he referenced conversations with Mother regarding the drug test and said "that was a condition we talked about together that he did need to take a test[.]"

Clearly, the two text message exchanges were only *part* of the agreement between the parties. "A contract that is partly in writing and partly oral is treated as an oral contract." *Jerry Duncan Ford, Inc. v. Frost*, No. E1998-00535-COA-R3-CV, 1999 WL 1273638, at *5 (Tenn. Ct. App. Dec. 29, 1999) (citing *Myers v. Taylor*, 64 S.W. 719, 720 (Tenn. 1901)); *see also Quinnan v. Am. Hosp. Supply Corp.*, No. 85-195-II, 1985 WL 4076, at *5 (Tenn. Ct. App. Oct. 29, 1985). The parol evidence rule provides that extrinsic evidence is not admissible to alter or vary the terms of an unambiguous *written contract*, but it does not exclude parol evidence where the agreement itself is in part an oral contract. *Jerry Duncan Ford*, 1999 WL 1273638, at *5. "In such a case, both the writing and the parol testimony are competent evidence of the entire agreement of the parties." *Id.*; *see also Quinnan*, 1985 WL 4076, at *5 ("Where only part of an agreement has been reduced to writing, so that the whole agreement is not integrated therein, parol evidence consistent with such written portion is admissible to prove the part resting in parol."). In the case at bar, then, the trial court properly considered the parties' testimony regarding their subsequent agreement because it concerned the very formation of the partly oral and partly written agreement and the terms thereof.

## 2. The Parties' Subsequent Agreement

In a nutshell, Father testified that Mother insisted on Son deferring his enrollment for one semester, while Mother claims that the parties agreed they were "not paying for college," period. The trial court found that the parties' subsequent agreement was limited to enrollment for the fall semester of 2016 and that it did not render unenforceable Mother's entire obligation to pay for college. Although Mother's counsel insisted that the parties' subsequent agreement encompassed "the entire college support," the trial judge rejected this argument, stating, "I don't find that was the parties' intent."

Appellate courts afford trial courts considerable deference when reviewing issues that hinge on the credibility of live, in-court witnesses because trial courts are uniquely positioned to observe the witnesses' demeanor and conduct. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). We will not re-evaluate a trial judge's credibility assessment absent clear and convincing evidence to the contrary. *Id.* At one point during Mother's

testimony, the trial judge specifically stated that he did not find Mother's testimony credible. Giving due deference to the trial judge's ability to assess the credibility of the parties, we cannot say that the trial court erred in crediting Father's testimony regarding the extent of the parties' subsequent agreement.

### D.     Repudiation of Relationship

Finally, we consider Mother's argument that the trial court should have held that her obligation to pay for college was excused due to "repudiation of relationship." Mother claims that she had a good relationship with Son when she initially agreed to pay for his college expenses, when he was four years old, but by the time of graduation, their relationship had soured. According to Mother, "Tennessee common law recognizes Mother is excused from [the] College Provision if Son repudiates the relationship." Regarding this issue, the trial court stated, "[Mother] tried to justify her refusal [to pay] by pointing out disrespectful and unruly conduct on the part of [Son], and none of that was an agreed upon condition to the parties' performance of their undertaking with respect to tuition." The trial judge likened Mother's argument to "unilaterally moving the goal post" after the parties' agreement was memorialized by a court order. Mother argues that the trial court erred in construing her argument as an attempt to place a unilateral condition on her payment obligation rather than "a common law excuse of performance" under the repudiation of relationship doctrine.

Mother relies on two cases to support her argument: *Law v. Law*, No. M2006-00433-COA-R3-CV, 2007 WL 3132932 (Tenn. Ct. App. Oct. 26, 2007), and *Medearis v. Baumgardner*, No. E2005-01785-COA-R3-CV, 2006 WL 770464 (Tenn. Ct. App. Mar. 27, 2006). We begin by examining *Medearis*. In that case, a mother sued to enforce an MDA provision requiring the father to pay college expenses. *Id.* at *1. The trial court refused to enforce the contractual agreement on the equitable grounds of unclean hands and the lack of cooperation and fair dealing by the mother. *Id.* In affirming the trial court's decision, we said (with bold emphasis ours):

> Both parties agree that a parent's obligation to pay support post-majority is **purely a matter of contract in Tennessee, and is outside the parent's duty of legal support** during minority. *See Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975). An agreement to pay support post-majority will be enforced as any other written contract. *See Hathaway v. Hathaway*, 98 S.W.3d 675 (Tenn. Ct. App. 2002). The parties also agree that the Chancellor was correct in holding that all contracts carry with them a duty

of good faith and fair dealing. *Elliott v. Elliott*, 149 S.W.3d 77 (Tenn. Ct. App. 2004).

In ascertaining and giving effect to the parties' intentions regarding the MDA, it is clear that the Contract provided that the father would have liberal visitation with Jimmy, as set forth in the visitation schedule, and that there would be a continuing and viable father/son relationship, as the Trial Court found. The Trial Court, however, concluded that this relationship had deteriorated, and that both son and mother were responsible. The evidence does not preponderate against this factual determination. Tenn. R. App. P. 13(d). The evidence establishes the mother did not pressure the child to go to visit the father, but instead, let a minor make those decisions. In the ensuing years, the mother did not tell, ask, or encourage the child to visit or contact the father at all, and she did not attend the counseling mandated by the Court after the 2000 hearing, and did not, as custodial parent, ensure that Jimmy went to such counseling. The result was a complete breakdown in the father/son relationship, and the Court properly concluded the father had not received all the benefits that he was entitled to under the MDA, and further the mother had violated the implied duty of good faith and fair dealing because she had impaired the father's rights under the Contract.

The mother argues this finding is improper because visitation remained within the Court's control during the child's minority, and the Court could have ordered that it take place. The Court's determination was not dependent simply on the failure of visitation, however, but was based upon the mother's complete disregard for the father/son relationship and the Court's orders. Clearly, a failure to visit cannot relieve a party of his/her legal duty to support a child during his minority. *See Hill v. Hill*, 152 S.W.3d 543 (Tenn. Ct. App. 2004). **The posture of this case, however, does not deal with the legal duty of support during the child's minority, rather with a contractual duty** to support an adult child who is in college.

As stated, the Contract must be interpreted and enforced as any other contract, and is subject to the same defenses as any other contract.

The Court found the mother failed to comply with the Court's prior order regarding counseling and working together to repair the relationship, which further evidenced her lack of good faith and fair dealing, as well as subjecting her claim to the additional defense of unclean hands. This latter doctrine has been utilized to "deny relief if the granting of the relief asked will, because of the complained of activities of the litigant, produce an illegal or unjust result." C.J.S. Equity, § 111. In this case, the Court invoked the doctrine of unclean hands due to the mother's conduct

regarding the child's relationship with the father, and her disregard of the Court's prior order regarding counseling. The evidence does not preponderate against this finding. Tenn. R. App. P. 13(d). It would be unjust to allow the mother to gain her requested relief from the Court when she disregarded the Court's prior order.

While Jimmy is not a party to this action nor to the contract, he did nothing to mend the relationship with his father, stating that he wanted nothing to do with him. His conduct as a third-party beneficiary of this Contract can be taken into account in determining whether the father's obligation to continue to support him post-majority should be enforced. *See Lopez v. Taylor*, 2005 WL 3555700 (Tenn. Ct. App. Jan. 4, 2005) ("A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement"). Further, as the Trial Court explained, **other jurisdictions that recognize a legal duty of a parent to support an adult child in college have held that the parent is excused from that duty when the child has repudiated his or her relationship with that parent.** *See McKay v. McKay*, 644 N.E.2d 164 (Ind. Ct. App. 1994); *Hambrick v. Prestwood*, 382 So.2d 474 (Miss. 1980); and *Milne v. Milne*, 383 Pa.Super, 177, 556 A.2d 854 (1989).

*Medearis*, 2006 WL 770464, at *3-4.

This language from *Medearis* has been cited in only one other case – *Law v. Law*, which also involved an MDA agreement for the payment of college expenses. The husband in *Law* argued that he should be relieved of his duty to pay for college expenses as set forth in the MDA based on the holding in *Medearis*. *Law*, 2007 WL 3132932, at *3. After quoting the above language from *Medearis*, and noting that the trial court failed to address the issue, this Court remanded for a hearing as to whether the wife violated her duty of good faith and fair dealing such that the husband was relieved of his contractual obligation to pay college expenses. *Id.* at *9. "In addition," we added, "the Trial Court must make a separate determination as to whether [the child] repudiated his relationship with Husband, thereby relieving Husband of his obligation to pay for [the child's] college education." *Id.*

Relying on *Law* and *Medearis*, Mother argues that "Tennessee common law recognizes" the doctrine of repudiation of relationship. We respectfully disagree. The *Medearis* Court simply mentioned that "*other jurisdictions* that recognize *a legal duty* of a parent to support an adult child in college have held that the parent is excused from that duty when the child has repudiated his or her relationship with that parent." *Medearis*,

13

2006 WL 770464, at *4 (emphasis added) (citing *McKay v. McKay*, 644 N .E.2d 164 (Ind. Ct. App. 1994); *Hambrick v. Prestwood*, 382 So.2d 474 (Miss. 1980); and *Milne v. Milne*, 383 Pa. Super, 177, 556 A.2d 854 (1989)). In Indiana, for example, the payment of college expenses is in the nature of child support, and a court may order a parent to pay part or all of such costs when appropriate. *See Panfil v. Fell,* 19 N.E.3d 772, 777-78 (Ind. Ct. App. 2014). However, "repudiation of a parent by a child is recognized as a complete defense to such an order." *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015) (citing Ind. Code § 31-16-6-2(a)(1)). In the *Hambrick* case, the Mississippi Supreme Court said that "[t]he duty of a father to send a child to college" is not absolute but depends on the child's aptitude and qualifications as well as his or her behavior toward and relationship with the father, "mak[ing] the child worthy of the additional effort and financial burden." *Hambrick*, 382 So.2d at 477. In *Milne*, the Superior Court of Pennsylvania noted that Pennsylvania was, at that time, "one of at least nineteen jurisdictions that, under some circumstances, require [] divorced parents to contribute to the college educations of their offspring beyond the age of eighteen." *Milne*, 556 A.2d at 857. However, the court held that "a trial court must consider estrangement as a factor in awarding educational support." *Id.* at 861.

Tennessee does not recognize such a *legal duty* to pay college expenses, and the *Medearis* Court did not adopt the "repudiation of relationship" defense that some courts in other jurisdictions apply in connection with that *legal duty*. We simply disagree with *Law* to the extent it suggests that "repudiation of relationship" would relieve a parent of his or her *contractual* obligation to pay college expenses. In *Bucaro v. Bucaro*, No. M2009-00432-COA-R3-CV, 2010 WL 288775, at *5 (Tenn. Ct. App. Jan. 25, 2010), this Court considered another parent's argument that he should be excused from his MDA agreement to pay for college expenses based on repudiation of relationship as that doctrine exists in other jurisdictions such as Indiana and Mississippi. At the outset, we noted,

> The terms of the MDA negotiated between Husband and Wife required Husband to "pay [Daughter's] college tuition for eight semesters in an amount not to exceed the tuition rates of Middle Tennessee State University." The MDA did not attach any conditions, related to his personal relationship with Daughter or otherwise, to Husband's fulfillment of his duty to pay Daughter's tuition. The MDA includes a standard merger or integration clause stating that it represents "the entire understanding of the parties" and that "[t]here are no representations, warranties, or promises other than expressly set forth herein."

14

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings. Exercising our discretion, we decline both parties' requests for attorney's fees on appeal under the frivolous appeal statute. Any remaining issues are pretermitted. Costs of this appeal are taxed to appellant, Jennifer Lee Miller, and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE